EMIL HAMMOND, Appellant, v. CITY OF EL DORADO SPRINGS, MISSOURI, a Municipal Corporation, and NATIONAL TANK MAINTENANCE CORPORATION, a Corporation, Respondents, No. 42302—242 S. W. (2d) 479.

Division Two, September 10, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, October 8, 1951.

*Smith & Williams* for appellant.

*W. W. Sunderwirth* and *Lynn M. Ewing* for respondent City of El Dorado Springs; *Ewing, Ewing & Ewing* of counsel.

 OLIVER, SPECIAL JUDGE—The appellant as plaintiff brought suit against the City of El Dorado Springs seeking to recover for personal injuries sustained in a fall from a water tower owned and operated by the respondent city. The respondent city filed its motion to dismiss for failure to state a cause of action. At the same time the city, by leave of court, filed its third-party petition against respondent National Tank Maintenance Corporation. The latter likewise filed motion to dismiss. The trial court sustained the motion to dismiss as to the city and the plaintiff refusing to plead further, dismissed the action. The plaintiff in due time, perfected his appeal from this ruling to this court.

The motion to dismiss filed by the National Tank Maintenance Corporation is still pending in the trial court pending this appeal. Although the transcript on appeal contains the petition filed against this third-party defendant, neither that petition nor the contract between the third-party defendant and the city attached thereto are before this court and all consideration thereof has been excluded in considering this opinion.

The sole question before this court is whether appellant states facts sufficient to constitute a cause of action.

After properly describing both the plaintiff, the defendant city, and alleging statutory notice to the city of plaintiff's claim, the petition alleges:

A. That the city for many years owned, operated, maintained, supervised and controlled a city water system supplying water to its residents at a profit and as a business venture.

B. That as *"an integral part of"* the system was a water tower of great height, constructed and maintained by the city and under its exclusive control and supervisions.

C. That on the 29th of May, 1949, plaintiff was employed by the National Tank Maintenance Corporation; *"that under the direction of plaintiff's employer,"* and by invitation of the defendant city, plaintiff was lawfully upon the water tower, working inside thereof *"in performance of the business of defendant in repairing, altering and improving said elevated water tower pursuant to a certain contract of employment entered into by and between defendant and plaintiff's said employer, an independent contractor."*

D. That while plaintiff was working inside the bowl of the tower, he was suspended in the air on a rope sling attached to a long board

which rested upon iron rods three-eighths (⅜ in.) inch in diameter commonly referred to as "spider rods"; *"that said spider rods were and are an integral part and portion of said water tower maintained and controlled by defendant"*; that while plaintiff was so suspended, *"and in the only manner which plaintiff could perform the alterations, repairs and improvements for defendant, as defendant well knew or should have known,"* the rods broke, bent, loosened and unfastened causing plaintiff to fall and be injured.

E. That defendant city was negligent as follows:

(1) Failed to warn plaintiff of a dangerous condition existing in and on the premises at a time when defendant could and should have anticipated injury to the plaintiff because of such condition.

(2) Defendant knew or should have known that the spider rods were rusted, corroded and structurally defective and that plaintiff could not perceive such dangerous condition himself.

(3) Defendant negligently installed or had installed said spider rods many years before, well knowing they had not been preserved against deterioration by water or humidity thereby creating a hazardous and dangerous condition of which condition defendant failed to warn the plaintiff.

(4) Defendant had knowledge, real or constructive, of the dangerous manner in which plaintiff was required to perform his work; had knowledge of the latent defect in the rods not visible to human eye and defendant failed to warn of the latent defective dangerous condition.

F. Plaintiff then alleges the injuries sustained which, if true, are extremely severe and permanent.

In determining the sufficiency of the petition this court must indulge every reasonable intendment in favor of the petition. Stephens v. Kansas City Gas Company, 354 Mo. 835, 191 SW. (2) 601 and cases therein cited. However, this court may also take into consideration ultimate facts which may be inferred from the facts well pleaded, as well as all inferences as logically flow from such pleaded facts. Welch v. Thompson, 357 Mo. 703, 210 SW. (2) 79 and Therrien v. Mercantile-Commerce Bank and Trust Company et al., 360 Mo. 149, 227 SW. (2) 708.

Certain ultimate facts and logical inferences can be drawn from the facts alleged in this petition. (1) The plaintiff's employer was an independent contractor in the strict meaning of that term. The city had no control over the manner or method of doing the work contracted for nor did it have any control over the plaintiff himself or his methods used in carrying out the work. (2) The contractor, plaintiff's employer, contracted to *"repair, alter and improve"* the water tower upon which the plaintiff was working for his employer. (3) The spider rods which broke or failed are an integral part of the tank, therefore, plaintiff's employer was required under his contract to *"repair, alter and improve"* the spider rods along the re-

mainder of the tank. (4) The repairs, alterations and improvements necessary to be made were the responsibility of the contractor, the city was merely to receive a completely repaired, altered and improved tank.

To repair a structure or thing presupposes that it is defective in some respect, otherwise there would be no necessity to repair, alter or improve. This court in the case of Meyer v. Wells Realty & Investment Co., 292 SW. 17, held that where an employee fell from a defective scaffold furnished by his employer in violation of a statute requiring a scaffold to insure safety of those using same while *"repairing"* a building, could not recover when it was shown employee was merely washing walls when he fell. The court cited with approval an Iowa case, Woodbury Company v. Tackaberry Co., 166 Iowa 642, 148 NW. 639, the opinion of which quoted an English case as follows:

"Repair always involves renewal; renewal of a part; of a subordinate part. A skylight leaks; repair is effected by hacking out the putties, putting in new ones, and renewing the paint. A roof falls out of repair; the necessary work is to replace the decaying timbers by sound wood; to substitute sound tiles or slates for those which are cracked, broken or missing; to make good the flashings and the like. Part of a garden wall falls down; repair is effected by building it up again with new mortar and so far as necessary, new brick and stone. Repair is restoration by renewal or replacement of subsidiary parts of a whole."

In the case of Heart of America Lumber Co. v. Belove, 28 Fed. Supp. 619, 620, Judge Merrill Otis for the Western District of Missouri states that an agreement to repair is an agreement to restore a thing to a sound or good state after decay, injury, dilapidation, or partial destruction. To the same effect is the case of Miller Hatcheries v. Buckeye Incubator Co., 41 F. (2) 619 (CCA. Mo.). The word repair contemplates an existing structure or thing which has become imperfect by reason of the elements or otherwise, and to repair we restore or supply in the original structure that which is lost, destroyed or missing. Fuchs v. City of Cedar Rapids, 158 Iowa 392, 139 NW. 903.

As heretofore pointed out the employer of the appellant-plaintiff contracted to repair this water tower. This necessarily included the repair of the spider rods since they were an *"integral"* part of and a subsidiary part of the whole tower. No where in the petition is there an allegation or a logical inference that either the contractor or his employee was incompetent, inexperienced or incapable of doing the work contracted to be done. It must, therefore, be inferred that the contractor was competent and capable of making the repairs needed on the tower and its integral parts. It must also be inferred that the

repairs contemplated were general repairs as distinguished from specific or designated repairs.

Before repairs of any kind can be made to a thing, it is first necessary to find out what is wrong with it. In other words, an inspection must be made of the thing to be repaired before any work is commenced, otherwise no repairs could ever be effected. Where one is engaged to repair something it necessarily implies that some defect exists. It is then the responsibility of the repairman to determine what that defect is. It does not follow that the person having the repairs made need inform the repairman ▮▮▮ what repairs are necessary unless he desires only one specific repair made. It is for this reason that we have experts or specialists in practically every field of endeavor, to tell us what is wrong and then remedy the defect.

The city may or may not have known what was wrong with the water tower or any part of it. In effect the city said to the contractor, "We have a tank which needs repairs, go fix it for us, do whatever is necessary to put it in good condition." Upon the acceptance of such a contract the contractor accepted the responsibility of determining what needed repairing, what was necessary to repair and to then complete the repairs. He may be said to have assumed the risks involved in placing the tank in good condition. In such a situation it was the duty of the contractor to discover any latent or concealed defects by proper tests and inspections and after ascertaining their existence, give his employee warning thereof. Batton v. Atlantic Coast Line R. Co., 212 N. C. 256, 193 SE. 674; cert. denied. Atlantic Coast Line R. Co. v. Batton, 58 S. Ct. 750, 303 U. S. 651, 82 L. Ed. 1112.

In the case of Marsanick v. Luechtefeld, 157 SW (2) 537, an employer directed his employee to wash a brick wall with muriatic acid without warning him of the danger thereof. The St. Louis Court of Appeals in the opinion stated the rule of law that an employer is under obligation to inform himself of those matters of scientific knowledge possessed by men of general education relative to dangers and hazards involved in the use of substances and processes used in his employment, and to acquaint his employee with those dangers to which in their ignorance the employee might otherwise be subject. (Citing cases and texts). The same rule might be applied here. The contractor being a competent person to repair water tanks must inform himself of the dangers likely to be present in prosecuting the work and so inform his employees. The petition alleges in substance that the spider rods were rusted, corroded, and structurally defective; that they had not been preserved against deterioration by water and humidity; and that they contained a latent defect not visible to the human eye. The contractor, under his contract to repair had the duty of discovering such defects if they existed and repair them. If he failed to do so he not only failed to fulfill his

contract but failed to perform his duty to his employee. The contractor had an equal or even a better opportunity to discover any defects than did the city.

The appellant cites several cases in support of his position. At the expense of lengthening this opinion we refer to those cases inasmuch as the precise question being raised is new to Missouri.

In Stein v. Battenfield Oil and Grease Co., 327 Mo. 804, 39 SW. (2) 345, the plaintiff was an independent contractor employed to repair and replace an electric conduit extending to a motor which in turn actuated other machinery by means of a pulley wheel and belt. While repairing the conduit on a wall, plaintiff used the motor as a platform. He slipped and fell into the belt. This court upheld the trial court in directing a verdict for the defendant at the close of plaintiff's case. Judge Ellison in the opinion stated the general rule as follows, "The deceased in going to the respondent's plant as an independent contractor to do work was an invitee. The respondent would be liable for injury to him occasioned by any unsafe condition of the premises encountered in the work. which was known to it but unknown to him; but would not be liable for injuries resulting from conditions obviously dangerous and known by deceased (contractor) to be so. As to these he was guilty of contributory negligence or more accurately assumed the risk."

It may be stated that the law in this state is to the effect that the general rule above quoted applies to an employee of an independent contractor as well as to the contractor himself. Streicher v. Mercantile Trust Co., 31 SW. (2) 1065, cited by appellant. In that case the plaintiff was an employee of an independent contractor who was hired to paint the building of the defendant. In painting a window sash gave away and plaintiff was injured. This court reversed and remanded a verdict ▇▇▇ for the defendant. After stating the general rule the court held the jury should have been instructed to find whether defendant knew of the defective sash, absence of knowledge on the part of the contractor and defendant's failure to warn. The cited case does not involve a situation where the contractor was to repair the window. The work was limited to painting and therefore is distinguishable.

In McLaughlin v. Creamery Package and Manufacturing Company, 130 SW. (2) 656, the Kansas City Court of Appeals stated the general rule then held that one hired to repair a leak in a corrugated iron roof could not recover under the evidence when a support to the roof gave away causing him to fall. The opinion refers to the case of Cummings v. Union Quarry & Construction Company, 87 SW. (2) 1039, 231 Mo. App. 1224, where the St. Louis Court of Appeals permitted an independent contractor to recover where he was hired to "Paint and Grease" a cable. The cable broke throwing plaintiff to the ground. It is interesting to note in that case that the plaintiff

alleged the contract with defendant was limited to the greasing and painting of the cable and further, that it did not include general repair work thereon nor examination thereof. The court approved a given instruction which required a finding that plaintiff was greasing and painting the cable, and that such *"was in the nature of maintenance of said equipment of defendant's quarry, but that said agreement was limited to the greasing and painting of said wires and did not include general repair thereon or inspection or examination of the attachments and fasteners thereof."* The drafters of the petition and the instructions must have anticipated the precise question which is now before this court.

In Ridenour v. International Harvester Co., 205 SW. 881, the Kansas City Court of Appeals held that an employee of an independent contractor can recover against the owner of the premises on which he was working for the negligence of the employee of the defendant. The plaintiff was an employee of an independent contractor hired to haul merchandise for defendant. Defendant's employee, in the scope of his employment negligently placed a heavy box so that it fell on plaintiff. The court ruled that the two men were not fellow-servants and defendant was liable.

In Behre v. Hemp and Company, 191 SW. 1038, the plaintiff was the employee of an independent contractor engaged to do certain specialized painting for the defendant. The plaintiff had certain usual routes to follow to and from his work. Upon a deviation from one of these routes he fell into an open hatchway. The Kansas City Court of Appeals affirmed a dismissal at the close of plaintiff's case.

Appellant cites further Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 SW. (2) 758. Here the plaintiff's deceased husband was an employee of an independent contractor whose contract with the defendant provided for washing windows in its building. The plaintiff alleged that the window was dangerous and defective; that such condition was known to the defendant; that because defendant failed to warn the deceased he was caused to fall to his death. Judge Van Osdol in the opinion stated the general rule and held that under the evidence the plaintiff failed to make a case and upheld a motion to dismiss at close of plaintiff's case.

Both parties cite the case of Feldewerth v. Great Eastern Oil Co., 149 SW. (2) 410, decided by the St. Louis Court of Appeals. The plaintiff was an independent contractor regularly used by defendant to repair gasoline pumps. A dairy company had a pump which would not pump gasoline. Plaintiff dismantled the upper third of the pump, fixed it so it would pump gas and so informed the dairy company. In the process he got gasoline on his clothing and around the pump. As he started to leave an employee of the dairy company told him the pump leaked at the bottom. He then dismantled the lower part of the pump and while so doing an explosion occurred injuring the

plaintiff. The evidence showed that a hidden journal box which may or may not have been defective before the accident, may or may not have caused the explosion. The court again stated the general rule but reversed the judgment for the plaintiff on the ground that he failed to ▮▮▮▮ make a case under the evidence. In its opinion the court states that there was no pretense whatever that the defective wiring was responsible for the failure to pump gas or that the leak had developed in the bottom, and further, that no rule of law would require the defendant to hunt for unsuspected hidden defects in the pump before contracting with an independent contractor to work on it.

Respondent seems to rely principally upon the case of Salmon v. City of Kansas City, 241 Mo. 14, 145 SW. 16. The plaintiff was an employee of an independent contractor constructing a sewer line for the defendant city. In the course of construction it was necessary to blast with dynamite. One crew was required to drill holes and another to load and shoot. After the explosion the foreman of the shooting crew would signify to the drilling crew whether it was safe to drill and directed it where to drill. After such an explosion the foreman directed plaintiff to drill next to a hole in which an unexploded charge still remained. The vibrations caused by the drilling tool exploded the charge and injured the plaintiff. The trial court sustained a demurrer to the petition. Judges Lamm, Woodson and Graves concurred with Judge Ferriss in affirming the trial court. The gist of the majority opinion is that the plaintiff was not injured in the proper execution of the work but solely by reason of the negligent manner in which it was performed, i. e., the negligent failure to detect the unexploded charge. The city having no control over the method of doing the work could not be held liable. Judges Valliant, Kennish and Brown dissented.

A case more closely in point than any cited by the parties is that of Kowalsky v. Conreco, Inc., et al., 264 N. Y. 125, 190 NE. 206, decided by the New York Court of Appeals. Plaintiff was the widow of the employee of an independent contractor. The contractor's work consisted of repairing iron window shutters, the hooks and the bars used to shut them, and the hinges. During the course of the work and before it was completed, the contractor sent deceased to replace a glass window pane which had been knocked out by other employees. In replacing the glass the deceased leaned against or took hold of one of the shutter bars which gave away causing plaintiff to fall to his death. The court held (1) the contractor had been hired to make the repairs, to remove the danger, and to secure the bars and shutters, (2) no responsibility rests upon the owner of real property to one hurt through a dangerous condition he has undertaken to fix, (3) an employee cannot recover for injuries received while doing an act to eliminate the cause of the injury.

The general rule as to the liability of an owner to an independent contractor and his employees as stated by our appellate courts is the law. However, we hold that there is an exception to that rule, to-wit: An owner or contractee is not liable for injuries to, or death of, an employee of an independent contractor or the contractor himself on the ground that he furnished such employee or contractor an unsafe place to work where the employee or contractor was injured or killed because of conditions he was correcting or repairing under a contract to repair.

Since the petition before us clearly brings the case within the exception stated, the action of the trial court in sustaining the motion to dismiss of respondent city is affirmed.

██ The record entries in the transcript filed here show that the plaintiff refused to plead further after the trial court sustained the City's motion to dismiss. The record entry shows "the action dismissed." Prior to this dismissal, however, the National Tank Maintenance Corporation had been made a third-party defendant. This third-party defendant filed a motion to dismiss which has not been disposed of. In order to avoid any procedural controversy and to clarify the record, the cause is remanded as to respondent National Tank Maintenance Corporation for disposition of its motion and to give plaintiff the opportunity to accept the Tank Company as a defendant under the ruling of State ex rel. McClure v. Dinwiddie, 358 Mo. 12, 213 SW. (2) 127, and ██ State ex rel. Merino v. Rose, 362 Mo. 181, 240 SW. (2) 705. All concur.