Zimmerman, J.
The salient facts are as follows:
Plaintiff was employed as a welder’s helper by the Fithian Contracting Company, an independent contractor, which, under a written contract with the defendant, was laying a six-inch gas line for it along Belle Vista avenue, running in a northerly and southerly direction in the city of Youngstown. Defendant had its inspectors “on the job” to see that Fithian performed its work according to specifications.
A twelve-inch high-pressure gas main belonging to defendant extended east and west along Mahoning avenue. On October 19, 1950, the employees of Fithian, including plaintiff, attached by a nipple and sad- *105 die a section of six-inch pipe to the side of a portion of the twelve-inch high-pressure main, and thereafter employees of defendant, either assisted by Fithian employees or with such employees in close proximity, installed a gate valve in the six-inch pipe and drilled an opening into the twelve-inch main through the six-inch pipe, thereby releasing gas into the six-inch pipe as far as the closed gate valve. This six-inch section of pipe, lying in a trench, was extended south into Belle Yista avenue by the laying of additional pipe, and the open end of the same was closed by employees of Fithian through the application of a rubber gasketed metal cap secured to the pipe by bolts passed through flanges. To further secure the cap and prevent the escape of gas which might seep through the gate valve, the cap was strapped to the pipe by steel rods, the ends of which were welded to the pipe. As a Fithian employee, plaintiff assisted in welding the nipple and saddle on the twelve-inch main and in welding the steel rods over the end of the cap.
On October 20,1950, a pipe fitter, who was a Fithian employee, engaged himself, under orders from his foreman, also a Fithian employee and also plaintiff’s foreman, in removing the cap from the end of the six-inch pipe. During such process, the cap blew off, due to the pressure of gas which had seeped through the gate valve, and struck plaintiff on the legs, causing the fracture of one of them.
There was testimony strongly indicating that the pipe fitter proceeded improperly in attempting to remove the cap in that he cut the iron rods strapping the cap before loosening the bolts to permit the escape of any gas which might have accumulated behind the cap. At the time of his injury, plaintiff was standing in the trench a short distance back of the pipe fitter and talking to other Fithian employees.
*106 During the trial of this action plaintiff testified fully and intelligently as to the entire operation of attaching the six-inch pipe to the twelve-inch main, the drilling of the opening into the twelve-inch main and the placing of the cap over the open end of the six-inch pipe, but insisted he had had no previous experience with high-pressure gas mains and did not know and was not informed by anyone that gas had passed into the six-inch pipe from the twelve-inch main. However, it clearly appears from the bill of exceptions that plaintiff’s foreman and the welder who was plaintiff’s immediate superior, both Fithian employees, were fully cognizant of the entire situation and the reasons for bolting and strapping the cap on the end of the six-inch pipe.
To sustain his right of recovery, plaintiff, as did the lower courts, relies heavily on the case of Bosjnak v. Superior Sheet Steel Co., 145 Ohio St., 538, 62 N. E. (2d), 305, the first paragraph of the syllabus of which reads:
' “An employee of an independent contractor, while engaged in the erection of a building upon premises, the possession and control of which are retained by the owner, is an invitee to whom the owner owes the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, and to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee. ’ ’
See, also, Hozian, an Infant, v. Crucible Steel Casting Co., 132 Ohio St., 453, 9 N. E. (2d), 143, 112 A. L. R., 333, and Davis v. Charles Shutrump & Sons Co., 140 Ohio St., 89, 42 N. E. (2d), 663.
Plaintiff contends, as stated in the brief filed by his counsel, “that where an owner [defendant] having *107 control of a dangerous agency brings that agency to or in proximity to the place where an independent contractor is engaged in doing work for said owner, said owner is liable to the servants of the independent contractor who, without warning, receive injury growing out of the presence of such potentially dangerous agency. ’ ’
Most of the cases cited and relied on by plaintiff involved a situation where an independent contractor and his employees entered upon the premises of the owner or occupier thereof, at his invitation, to perform work for him, unaware and uninformed as to a dangerous condition on the premises created by the owner or of which he had knowledge. In such circumstances, an employee of the independent contractor, who suffers injury by reason of the dangerous condition may recover damages from the owner for such injury, on the ground that the owner is chargeable with actionable negligence in failing to remove the dangerous condition or to give notice or warning of its existence.
In the instant case, an entirely different situation is presented. Here, Fithian, an independent contractor, was engaged by the defendant to lay gas pipes for it. As an incident of such engagement, a pipe was attached to a high-pressure gas main and later capped, which project was carried out by employees of Fithian, including plaintiff, as a part of the work they were hired to do. By the very nature of the work and what was done in performing it, Fithian, through its foreman and the welder, plaintiff’s immediate superior, was fully aware that gas might enter the pipe past the gate valve and of the potential danger which plaintiff might encounter. In these circumstances, it was Fithian’s duty to warn and protect the plaintiff, and no such duty devolved on defendant. See Union Tank & Supply Co. v. Kelley (C. C. A. 5), 167 F. (2d), 811, *108 certiorari denied, 335 U. S., 827, 93 L. Ed., 381, 69 S. Ct., 54.
The rule of general acceptance is that where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor’s employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor. Such principle was recognized and applied in the following cases:
Salmon v. Kansas City, 241 Mo., 14, 145 S. W., 16, 39 L. R. A. (N. S.), 328; Hammond v. City of Eldorado Springs, 362 Mo., 530, 242 S. W. (2d), 479; Broecker, Admx., v. Armstrong Cork Co., 128 N. J. Law, 3, 24 A. (2d), 194; Kowalsky, Admx., v. Conreco Co., Inc., 264 N. Y., 125, 190 N. E., 206; Valles v. Peoples-Pittsburgh Trust Co., 339 Pa., 33, 13 A. (2d), 19. Compare State, to Use of Reynolds, v. City of Baltimore (Md.), 86 A. (2d), 618.
Or, stating the matter a little differently, one who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance. See Grace v. Henry Disston & Sons, Inc., 369 Pa., 265, 85 A. (2d), 118; Sesler v. Coal Co., 51 W. Va., 318, 41 S. E., 216; White’s Supplement to Thompson’s Commentaries on the Law of Negligence, 162, Section 979; 2 Shearman & Redfield on Negligence (Rev. Ed.), 689, Section 279.
It is always important to remember that in order to establish “actionable negligence” three essential elements must be shown, namely, a duty or obligation on the part of the person charged with such negligence to protect another from injury, a failure to discharge *109 that duty, and an injury to such other proximately resulting from such failure.
Under the circumstances disclosed by the evidence in this case, it is our opinion that defendant’s motion for a directed verdict at the close of all the evidence should have been sustained. Wherefore, the judgment of the Court of Appeals is reversed and final judgment is rendered for the defendant.

Judgment reversed.

Weygandt, C. J., Middleton, Taft, Matthias, Hart and Stewart, JJ., concur.