GEORGE GRANT ET AL V. JOHN A. MARSHALL ET UX

No. A-5033. Decided June 8, 1955.
Rehearing overruled July 20, 1955.
(280 S.W. 2d Series 559)

R. A. *Kilpatrick* and *Melvin F. Adler,* of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding that the exemption of the homestead from subjection to community debts

did not apply to the proceeds from the voluntary sale of the homestead, because after the death of the widow the proceeds were paid to the executor of the estate, and that when she died she left no constitutent member of her family. Zwernemann v. Von Rosenberg, 76 Texas 522, 13 S.W. 481 and Chiders v. Henderson & Co., 76 Texas 664, 13 S.W. 485.

*John A. James, Jr.,* and *Wm. Roy Anderson,* of Cleburne, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

A. J. Grant and wife, Florence Grant, owned a community homestead consisting of 157 acres of land in Johnson County. On December 28, 1951, Mr. Grant died intestate and insolvent, leaving as his survivors his wife, Florence Grant, two adult sons and two married daughters. About one year later Mrs. Grant died testate. By her will George Grant, a relative of her husband, was made executor of her estate. A short time before her death Mrs. Grant, joined by all of her children and by respondents, Mattie Marshall and husband, John A. Marshall, executed a deed conveying the homestead to F. E. Gardner. A part of the cash proceeds of the sale was paid prior to Mrs. Grant's death, and the remainder was paid to her executor after her death. This suit was brought by respondents, Mattie Marshall and husband, against George Grant as independent executor of the estate of Florence Grant and the four adult children of the Grants to subject the proceeds derived from the sale of the community homestead to the payment of community debts allegedly due respondents and to establish the claim of Mattie Marshall as an heir at law and child by adoption of A. J. Grant and Florence Grant. Based upon findings by the jury the trial court rendered judgment ordering George Grant, executor, to pay to respondents out of the funds derived from the sale of the homestead the following sums: (1) $3,197.20 in payment of community debts owing to respondents; (2) $502.40 as the interest which Mattie Marshall inherited from A. J. Grant as his lawfully adopted daughter and heir at law; (3) $10.00 bequeathed to Mattie Marshall by the terms of the will of Florence Grant. The case was affirmed by the Court of Civil Appeals. 272 S.W. 2d 580. Item (3) was not put in issue by the pleadings or evidence, and its inclusion in the judgment will be treated as surplusage.

We consider first the claimed right of respondents to sub-

ject the proceeds of the sale of the homestead in the hands of the executor of the estate of Mrs. Grant to the payment of the debts owing to them by the community estate. In answer to special issues the jury found that respondent, Mattie M. Marshall, rendered nursing services to A. J. and Florence Grant, for which Mr. and Mrs. Grant intended to compensate her, and for which she reasonably expected to be compensated; that the sum of $2,060.00 would reasonably compensate her for such nursing services; that A. J. Grant executed the notes declared upon by respondents; that there was consideration for the notes.

It is important to outline the exact question presented for decision. The suit was for community debts and not for individual debts incurred by Mrs. Grant after the death of her husband. The petitioners pleaded the coverture of Mrs. Grant as a defense to any personal liability on her part for those community debts. Upon the death of Mr. Grant he was survived by a constituent member of his family, his wife, Mrs. Florence Grant. His estate at the time of his death was insolvent.

Article 3494, Revised Statutes, reads as follows:

"Should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate except as hereinafter provided."

That statute is not ambiguous; its provisions are clear. Upon the death of Mr. Grant, his estate being insolvent, the homestead descended to his widow and children exempt from liability for the claims of all unsecured creditors. Zwernemann v. Von Rosenberg, 76 Texas 522, 13 S.W. 485; Childers v. Henderson et al., 76 Texas 664, 13 S.W. 481; Lacy et al v. Locket, 82 Texas 190, 17 S.W. 916; American Bonding Co. v. Logan, 106 Texas 306, 166 S.W. 1132; Hoefling v. Hoefling, 106 Texas 350, 167 S.W. 210, 212; and, as held in the case last cited, "* * * that status, in so far as rights of general creditors of such decedent are concerned, cannot possibly be affected by subsequent voluntary sale or abandonment of homestead property." The exemption does not extend to any situation other than that disclosed by this record. There is no like exemption statute in favor of the husband when he survives his wife; neither is the homestead exempt from the payment of community debts when the husband dies leaving no constituent member of his family. Givens v. Hudson, 64 Texas 471. Article 3834 exempting the proceeds

of the voluntary sale of the homestead from garnishment for a period of six months has no application when the husband dies insolvent, leaving a constituent member of the family surviving him. American Bonding Co. v. Logan, supra.

This case falls squarely within the provisions of Article 3494, Revised Statutes, and upon the authority of that Article and numerous cases construing and applying same, some of which are cited above, we hold that it was error to subject the proceeds of the sale of the Grant homestead to the payment of the community debts owing to the respondents.

■ The Court of Civil Appeals correctly held that Mrs. Grant, the survivor of the community, was authorized to sell the community homestead of herself and her deceased husband in order to secure funds with which to discharge unsecured community debts. That holding is supported by the authorities cited in its opinion and is not questioned here. Our question is not whether she had that right, but whether, having sold the community homestead, she was compelled to pay all community debts. Stated differently, the question is whether or not the sale of the homestead created a right in respondents as unsecured creditors of the community to compel the payment of the debts owing to them. No principle of law with which we are familiar would create such a right. While Mrs. Grant had the right to pay the community debts owing to respondents, they had no right to compel her to do so.

■ It is claimed that Mrs. Grant elected to pay the debts owing to respondents. The finding of the jury that she intended to compensate Mrs. Marshall for her nursing services, even if it be given the construction contended for that it was a finding of her intention to pay for such services out of the proceeds of the sale of the homestead, would not require her executor to pay same, for intention alone would not be given that effect. It must be followed by an actual payment or direction to pay. But that finding should not be so construed. It was made in support of the theory of an implied contract to pay, there being no express contract with respect thereto. It is not a finding that after the sale of the homestead Mrs. Grant intended that respondents' claims be paid out of the proceeds thereof, but a finding that when the services were rendered she intended to pay for the same.

It is claimed that by the terms of her will Mrs. Grant elected to pay respondents' claim from the proceeds of the sale of the

homestead and directed her executor to do so. That will reads as follows:

" 'This is my will and testimony. After all debts are settled I want this Estate to be equally divided with my four children Claude Eula Horace and Stella and I want Mattie Marshall to have ten dollars for her share of said Estate. Also I hereby appoint George Grant Independent Executor of this will without bond'."

Since Mrs. Grant had the authority to pay community debts with the proceeds of the sale of the homestead, she had the authority to direct her executor to pay same out of the proceeds coming into his hands after her death. But it is our view that the words "all debts," as used in the will, should not be construed as a direction to the executor to pay all debts incurred by Mr. Grant as obligations of the community. By "all debts" the testatrix must have meant all debts for which her estate would be legally liable, which, of course, would include funeral expenses. It is significant that the will left only ten dollars to Mrs. Marshall. As will appear from facts stated later in this opinion Mrs. Grant doubtless thought when she made her will that Mrs. Marshall was her adopted daughter, and the only provision of the will directing the disposition of the estate otherwise than by the law of descent and distribution, was the provision bequeathing to Mrs. Marshall ten dollars. There is evidence in the record that Mrs. Grant did not recognize the justness of the claims of Mrs. Marshall and that affords an explanation of why the will was written bequeathing $10.00 to her. The contention that Mrs. Grant elected to pay respondents from the proceeds of the sale of the homestead and directed her executor to do so cannot be sustained.

■ The theory that petitioners are estopped to repudiate the claims of respondents must be rejected. It is based primarily upon the ground that Mrs. Marshall understood from a conversation with George Grant, who later became the executor of Mrs. Grant's estate, that if she would join in the execution of the deed to Gardner conveying the homestead, her claims would be paid out of the proceeds of the sale. The facts, if any, warranting that conclusion by her are very meager. As pointed out below, there had been an attempt by the Grants in 1944 to adopt Mrs. Marshall. For some reason it must have been thought necessary or desirable for the Marshalls to join in the conveyance, but that was not necessary to its validity. Their joining in the deed conferred no additional right upon the purchaser; neither did it cause Mrs. Marshall to suffer any injury. It was

mere surplusage. The essential elements of an estoppel *in pais* are not present.

Our conclusion on this phase of the case is that as a matter of law respondents must be denied recovery on their claims as creditors of the community.

■ We come now to consider the claim of Mrs. Marshall that she is entitled to inherit from A. J. Grant, who died intestate, as his adopted daughter. It is disclosed that on October 26, 1944, Mr. and Mrs. Grant executed, acknowledged, and filed for record a purported deed of adoption of "one Mattie M. Coggins, now Mrs. Mattie M. Marshall, wife of John A. Marshall, now of the age of 27 years." If Mrs. Marshall was legally adopted by that deed, statutory authority for adoption by that method must be found, for adoption was unknown to the common law of England. State ex rel Walton v. Yturria, 109 Texas 220, 204 S.W. 315. Under Title 3 of the Revised Statutes as it existed prior to 1931 both minors and adults could be adopted by deed, but the 42nd Legislature in 1931 enacted a statute which provided for adoption by court order only, and not by deed, and did not provide for the adoption of adults. By that Act only minors were subjects of adoption. Acts 42nd Legislature, Chapter 177, p. 300. Section 11 of that Act reads as follows:

"That title of the Revised Statutes of the State of Texas, Revision of 1925, be and the same is hereby repealed."

The title to be repealed was not otherwise referred to in the body of the Act. The Act as a whole, including the emergency clause, discloses that its purpose was to provide a new law of adoption, differing materially from the law as it had theretofore existed. The law of adoption in the 1925 revision is Title 3 of the statute. That the legislative intention was to repeal that title is made certain by the caption of the Act, reading as follows:

"An Act providing for the adoption of minors, establishing legal relations between the children and adopted parents and repealing Title 3 of the Revised Civil Statute of the State of Texas, Revision of 1925; and declaring an emergency."

Considering the Act as a whole, including the caption, it is clear that the Legislature intended to repeal Title 3, and the omission of the number of that title in the body of the Act can be supplied. Camden Fire Insurance Assn. v. Harold E. Clayton & Co., 117 Texas 414, 6 S.W. 2d 1029; Texarkana & Ft. S. Ry. Co. et al v.

Houston Gas & Fuel Co., 121 Texas 594, 51 S.W. 2d 284; Anderson v. Penix, 138 Texas 596, 161 S.W. 2d 455.

In 1947 the 50th Legislature, Chapter 428, page 1009, Art. 46b-1, Vernon's Texas Statutes, provided for the adoption of adults. During the period from 1931 to 1947 there was no legal method by which an adult could be adopted, and the attempt to adopt Mrs. Marshall in 1944 was a nullity.

It is claimed that an adoption was effected by estoppel. No special issue was submitted or requested on that ground of recovery, and, unless it was conclusively established by the record, it was waived. Texas Rules of Civil Procedure 279. It was not conclusively established, but, to the contrary, the record establishes that there was no legal adoption at all. Obviously, if Mrs. Marshall could not be adopted in 1944 under the terms of the statute, she could not be adopted by estoppel. The evidence does not raise the issue that she was adopted prior to 1931. The essential elements of adoption by estoppel as autlined in Cavanaugh v. Davis, 149 Texas 573, 235 S.W. 2d 972, are not present. In fact, the record negatives the existence of a contract to adopt her while she was a minor, which is an essential element of adoption by estoppel.

The judgments of the trial court and Court of Civil Appeals are reversed, and judgment is here rendered that respondents take nothing by their suit, without prejudice, however, to the right of Mrs. Marshall to the bequest of $10.00 to her in the will of Mrs. Grant.

Opinion delivered June 8, 1955.

Associate Justices Brewster and Walker not sitting.

Rehearing overruled July 20, 1955.