Abe S. ALLEN, Appellant,

v.

TEXAS ELECTRIC SERVICE COMPANY, Appellee.

No. 16240.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 13, 1961.

Rehearing Denied Nov. 17, 1961.

Stone & Stone, Jacksonville, Peery & Wilson, Wichita Falls, Jones, Brian & Jones, and Franklin Jones, Marshall, for appellant.

Bullington, Humphrey, Humphrey, & Fillmore, Wichita Falls, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Nelson & Sherrod, Wichita Falls, Black & Stayton, and John W. Stayton, Austin, for appellee.

BOYD, Justice.

This is an appeal by Abe S. Allen from a take nothing judgment in his suit against Texas Electric Service Company.

Appellant was seriously injured when he came into contact with an uninsulated energized wire carrying 7,200 volts, while working for R. B. Stovall Construction Company, and was paid $27,404.00 by Stovall's compensation insurance carrier. Appellee had contracted with Stovall to change out

cross arms of its power lines which needed replacement, and to replace small wires, known as No. 4 ASCR, with larger wires, known as No. 4/O Aluminum, in which work appellant was engaged when he received his injuries. The method employed in replacing the wires was to leave the energized smaller wire in service and to replace it in sections by pulling in the heavier wire with a rope and fastening it alongside the energized lighter wire and then to deenergize the lighter wire and to energize the heavier wire. This method required anchoring points for both the new and the old wires, and these anchoring points were established by putting in what were called "double dead-ends". Appellant and his coworker Davis were putting in double dead ends when appellant was injured.

Appellant alleged in substance that appellee retained such right of control and supervision as to make it liable for appellant's injuries, which, it is alleged, resulted from appellee's failure to exercise, its control with reasonable care; that the work contracted to be done by Stovall was inherently dangerous, and that appellee had the nondelegable duty of supervision and enforcement of safety measures, which duty it failed to perform; that it was negligent in furnishing insufficient and defective equipment; that it was negligent in failing to furnish a safe place for appellant to work; and that such acts of negligence were proximate causes of appellant's injuries.

The jury acquitted appellee of negligence with respect to the furnishing of equipment and the condition of the place of work; found that the work was inherently dangerous, and that appellee was negligent in failing to cause a foreman or superintendent to make a safety survey of the contemplated job, in failing to make recommendations of precautions to be used, and in failing to require a foreman to supervise; and that such acts of negligence were proximate causes of appellant's injuries. Causative acts of negligence were found against Stovall in failure to require

a foreman to watch the performance of the work, in failing to make a safety survey, and in failing to insist upon the proper use and application of safety equipment, but none of such acts was found to be the sole proximate cause. The jury also found that the action of appellant in starting to make his dead-end connection before his fellow employee, working on the other end of the connection, had finished his work, was contributory negligence. Damages were found in the amount of $190,600.

On motion by appellant the court disregarded the finding as to contributory negligence, but overruled appellant's motion for judgment; and on motion by appellee it disregarded the findings that the work was inherently dangerous, that appellee was negligent in failing to make a safety survey, in failing to give precautions to be followed, and in failing to require a foreman to supervise the progress of the work being done by appellant, and sustained appellee's motion for judgment.

By exhaustive brief and oral argument appellant ably presents the contentions that it was shown that appellee retained such right of control as to make it liable for appellant's injuries, and that appellee had the nondelegable duty to enforce safety rules and precautions in the performance of work found by the jury to be inherently dangerous. We are unable to agree with appellant's contentions.

■ The general rule is that the owner-contractee is not liable for injuries sustained by employees of an independent contractor in the performance of the work which has been engaged. Continental Paper Bag Co. v. Bosworth, Tex.Civ.App., 215 S.W. 126; 27 Am.Jur., sec. 30, p. 510; Annotation, 20 A.L.R.2d, p. 901. An exception to the general rule exists where the employer of the contractor retains control over the operative details and the right to direct the manner in which employees of the contractor perform their work. In such case the employer of the contractor must exercise reasonable care

for the safety of such employees. Allbritton v. Sunray Oil Co., D.C., 88 F.Supp. 54; Sun Oil Co. v. Kneten, 5 Cir., 164 F.2d 806.

In his brief appellant admits that the written contract between appellee and Stovall had no provision as to appellee's right or lack of right to control the work of Stovall. Our careful search of the record fails to disclose any evidence of appellee's right of control, other than to see that the work was done in accordance with the contract. Appellee did not direct Stovall's employees in their work. They took orders only from Stovall. No issue was submitted or requested as to appellee's right of control; and since appellant alleged that he was working as an employee of Stovall when he sustained his injuries, and that Stovall was doing the work under a contract with appellee, it would appear that it was appellant's burden to show conclusively, or obtain a jury finding of, the existence of the right of control in appellee. Grant v. Marshall, 154 Tex. 531, 280 S.W.2d 559; McCarver v. City of Corpus Christi, 155 Tex. 153, 284 S.W.2d 142; Rule 279, Texas Rules of Civil Procedure.

Another exception to the general rule of non-liability of the owner-contractee seems to exist where the contractor's employees are injured as a result of conditions attending work which is unusually dangerous in itself as the result of circumstances brought about by the owner-contractee. Sun Oil Co. v. Kneten, supra; Continental Paper Bag Co. v. Bosworth, supra; 23 Tex.Jur., sec. 22, p. 569.

It appears that there was no hazard connected with the work which appellant was doing which was known to appellee and not known to appellant. Stovall furnished all of the safety equipment with which the work was done. Appellant was familiar with the work, and he said that he understood the danger involved should he come into contact with the energized line. He was an experienced electrical worker, having been a lineman for eleven years, a first class lineman for several years, and a foreman for three companies. He said that he supposed he had made, or assisted in making, or supervised the making of, seven or eight thousand dead-end connections, but he would not say that thousands were made on energized lines. The voltage on some of the energized lines on which he had made dead-end connections was as high as 12,000 or 12,500. Although at one place in the record appellant testified that the dead-end shoes which were furnished him by Stovall should be used for making connections on copper wires, and that another type of shoe would be better for aluminum wires, with which he was then working, at another point he testified as follows:

"Q. Was there anything lacking there that * * * Stovall * * * failed to have on the truck that you figured, based on your experience, that you needed to make that cut? A. No, sir.

"Q. Everything was there? A. Yes, sir.

"Q. Did you employ it all, use it all, in making the cut? A. All that I needed, yes, sir."

It is not known how or why the accident happened. Appellant said that he did not know whether his foot got into the neutral wire. He testified:

"Q. * * * Did you fall or lose your balance or just what happened? A. I don't know. * * *

"Q. * * * Did you slip? A. No, Sir, I can't say that I slipped.

"Q. And do you testify that you don't know what happened? A. That's right. * * *

"Q. And in making that loop, is it possible that the wire got loose from you and hit you on the shoulder? A. Yes, sir.

"Q. It would just spring out, is that right? A. Yes, sir.

"Q. And if that didn't happen, what is your other opinion as to how the accident happened? A. Well, I could have slipped, the hooks.

"Q. Your climbers could have slipped? A. Yes, sir, but I don't think they did. Of course, I don't know. I couldn't be positive either way, one way or the other.

"Q. You don't have any opinion about it now? A. No."

We cannot bring ourselves to believe that this record shows that appellee failed in any duty it owed to appellant, or that anything it might have done during the progress of the work would have prevented the accident.

In Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393, the court said: "A general contractor in control of premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees. . * * * In determining whether a landowner is liable to an invitee for injuries sustained on the premises, the duty of the landowner is frequently phrased as one 'to exercise ordinary care to keep the premises in a reasonably safe condition' so that the invitee will not be injured. * * * But that is only a simplified statement of the duty, sufficient to meet the problems presented in the particular cases. There are certain qualifications not there expressed. It is now well established in this state that the duty as there expressed does not extend to those invitees who know or should know of the existence of the particular condition and who appreciate or should appreciate its dangers. * * * What the qualification means, of course, is that inasmuch as the invitee has knowledge of the dangers there is no duty on the owner to warn him of them. It means also that if, having knowledge of the dangers, the invitee exposes himself to them he must take the premises as he finds them and there is no duty on

the owner to protect him even by the use of reasonable precautions to eliminate the hazards."

In Deaton v. Board of Trustees of Elon College, 226 N.C. 433, 38 S.E.2d 561, it was held that the general rule that one having work done by an independent contractor is under the obligation to furnish reasonable protection against consequences of hidden dangers, applies only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known.

In Hammond v. City of El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367, it was held that the employer-contractee was not liable to the employee of an independent contractor for injuries resulting from conditions obviously dangerous and known to be so by the employee.

In Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43, the court held as a matter of law that the employer of an independent contractor, who had been engaged to hoist steel beams to the roof of its building, was not liable to employees of the contractor for injuries sustained through electric shocks from wires hanging within four feet of a steel cable used for hoisting the beams. In resting its decision on the ground that there was no duty on the part of the contractee to warn the contractor or his employees that the electric wires were dangerous, the court pointed out that the plaintiffs had the advantage of long experience in structural steel work; that, whether or not they had been warned, they could easily see the wires; and that the defendant did not possess any superior knowledge of the dangerous instrumentality.

Our disposition of the case makes unnecessary a determination of other contentions set forth in appellant's brief.

The judgment is affirmed.