**HOUSTON BELT & TERMINAL RAILWAY COMPANY, Appellant,**

v.

**J. WEINGARTEN, INC., Appellee.**

No. 15035.

Court of Civil Appeals of Texas.

Houston.

Nov. 9, 1967.

Rehearing Denied Nov. 30, 1967.

Fulbright, Crooker, Freeman, Bates & Jaworski, Charles M. Haden, Gary B.

Webb, Thomas P. Sartwelle, Houston, for appellant.

Vinson, Elkins, Weems & Searls, B. Jeff Crane, Jr., Raybourne Thompson, Jr., Houston, for appellee.

COLEMAN, Justice.

This is an appeal brought by the Houston Belt & Terminal Railway Company (hereinafter referred to as The Belt), from a judgment awarding indemnity against it to J. Weingarten, Inc. (hereinafter referred to as Weingarten), in the amount of $51,-749.70. The judgment was based on a contract between these parties.

Charles Tepkin, husband of the plaintiff, was killed while working as a switchman for The Belt when a railroad car on which he was riding derailed while operating on tracks owned by Weingarten in Harris County, Texas. The plaintiff recovered a joint and several judgment against The Belt and Weingarten. By agreement The Belt has paid the judgment and the only questions on appeal concern indemnity and contribution.

On December 15, 1952, The Belt and Weingarten executed an agreement governing the maintenance and operation of certain industrial spur tracks owned by Wiengarten. By this contract The Belt agreed to construct and/or maintain and to operate certain spur tracks to warehouse facilities owned by Weingarten. The agreement provided that Weingarten would pay to The Belt from time to time, within twenty days after bills are rendered therefor, the entire cost of maintaining and renewing these spur tracks, The Belt to be the judge of the necessity for and the character of maintenance required. Weingarten also agreed to indemnify and hold harmless The Belt for loss, damage or injury from any act or omission by Weingarten, its employees or agents, to the person or prcperty of the parties hereto and their employees, and to the person or property of any other person or corporation while on or about these

tracks. The agreement further provided that if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally. It specified that it could be terminated by The Belt on ten days' written notice if Weingarten failed to keep any of its covenants therein contained, and that it could be terminated by either party on thirty days' written notice. It also provided that no termination or expiration shall affect the rights and liabilities, if any, of the parties hereunder then existing. It is undisputed that neither party has given formal written notice of any intention to terminate the contract.

Appellant's first four points of error are based on its contention that the trial court erred in concluding that the contract was in full force and effect at all times material to this law suit. The contract clearly gives The Belt the sole right and duty to determine the necessity for and character of repairs on the tracks, but it is the contention of appellant that the contract was rescinded by agreement of the parties.

No issues were submitted to the jury on the question of the recision of the contract. The jury found that The Belt failed to furnish their employee a safe place to work; that Weingarten failed to provide adequate drainage for the roadbed of the tracks; that Weingarten failed to place a sufficient number of ties under the tracks; that Weingarten failed to provide sufficient ballast for the roadbed of the tracks; that each of these failures constituted negligence and a proximate cause of the derailment of the car in question.

Each of the acts of negligence charged to Weingarten concerned a matter fairly within the obligation of The Belt to maintain and renew the tracks.

The only act of negligence on the part of Weingarten, as found by the jury, which The Belt contends was an independent act of negligence not concerning track maintenance, is the finding that Weingarten failed to provide adequate drainage *for the roadbed*. There is no testimony that the condition of the drainage ditch was responsible for the fact that the track was uneven unless it be the testimony that the ditch was not deep enough to permit the installation of the drain pipe going under the track in the immediate vicinity of the accident at the proper level. There was testimony that the level was sufficient had iron pipe been used rather than jointed concrete pipe. There was testimony that this pipe separated at a joint and became stopped up, permitting a seepage of water into the roadbed. There was testimony that the roadbed became soft and that this condition together with an insufficient number of ties and quantity of ballast permitted the rails to sink and to become uneven, a condition known to The Belt as existing for a considerable length of time prior to the accident.

In its cross-action The Belt alleged that the contract with Weingarten was in full force and effect at all times material to this action. It alleged that before the derailment The Belt warned Weingarten that the tracks needed repairs, but that instead of allowing The Belt to do these repairs Weingarten started haggling about the price and at length undertook to do the work itself and would not allow The Belt to perform the needed repairs. It alleged that the tracks were repaired by Weingarten in an improper manner and, as a result, became uneven and out of level, causing the accident in question. The cross-action charged that this conduct constituted negligence on the part of Weingarten, as well as a breach of contract. There is no allegation of an offer to rescind on the part of one party accepted by the other, or of facts from which fair notice of such a defense would appear. There was no pleading of the conclusion that the contract had been mutually rescinded.

■ Under Rule 301, Texas Rules of Civil Procedure, requiring the judgment to conform to the pleadings in a case, a judg-

ment supported by proof of facts which were not alleged would be erroneous. Starr v. Ferguson, 1943, 140 Tex. 80, 166 S.W.2d 130; Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183 (Tex.Sup. 1964).

■ Appellant is not in a position to complain of a judgment based on the conclusion that the contract was in full force and effect. Jones v. Allen, 294 S.W.2d 259 (Tex.Civ.App., 1956, ref., n. r. e.); Radcliff v. Clemons, 265 S.W.2d 182 (Tex.Civ. App., 1954, ref., n. r. e.).

■ Appellant did not complain of the conclusion of the trial court that the contract was in force, or that the trial court failed to find recision by mutual consent, in its motion for new trial. Rule 374, T. R.C.P., provides that a ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required, shall be considered as waived. Appellant's first four points of error were waived by reason of appellant's failure to set them out distinctly in the motion for new trial. Dallas Ry. & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379; State of Cal. Dept. of Mental Hygiene v. Bank of Southwest Nat. Ass'n, 1962, 163 Tex. 314, 354 S.W.2d 576.

■ The evidence is undisputed that after the accident under consideration, appellant repaired the track and billed Weingarten for the expense, and that Weingarten paid this bill. Other evidence demonstrated that both parties performed under the contract after the occurrence relied on as showing mutual recision. If after a party breaches a contract, the other party continues to insist on performance on the part of the party in default, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties. Dibrell v. Ramsey Bros., 294 S.W. 645 (Tex.Civ.App., Austin, 1927, error ref.); Sinclair Refining Co. v. Costin, 116 S.W.2d 894 (Tex.Civ.

App., Eastland, 1938); Continental Casualty Co. v. Boerger, 389 S.W.2d 566 (Tex.Civ. App., Waco 1965, writ dism.).

By its fifth and sixth points appellant urges that the trial court erred in granting Weingarten indemnity against The Belt, and in failing to grant The Belt indemnity against Weingarten, by reason of the provisions of the contract since the jury found Weingarten guilty of specific acts of negligence proximately causing the derailment, and only found The Belt guilty of failing to provide its employee with a safe place to work, a nondelegable, statutory duty.

By Article I of the contract The Belt agreed to maintain and operate the track in question. By Article II Weingarten agreed to pay within twenty days after bills were rendered the entire cost of *maintaining* and *renewing* the track, The Belt to be the judge of the necessity for and the character of maintenance required. Weingarten agreed to keep effective the necessary permission to cross public streets and to do *or* pay for such paving at crossings as might be required by the City or County. Weingarten also agreed to keep an area 8½ feet from the center of the track and 27 feet above the track clear of obstructions, and to adopt and enforce reasonable rules and regulations for the conduct of its employees while on or near the track to protect them from injury, and to conduct its grocery supply business continuously during the term of the contract. Weingarten agreed to indemnify The Belt against loss or damage arising by fire caused by locomotives to property on Weingarten's premises, with certain exceptions, *regardless of The Belt's negligence*; to indemnify The Belt for loss resulting from an act or omission of Weingarten, its agents or employees, to the persons or property of the parties, their employees or other persons on or about the track. Finally, it was agreed that if any claim or liability, *other than from fire,* should arise from the joint or concurring negligence of both parties, it should be borne by them equally.

The Belt filed an answer to Mrs. Tepkin's petition and a cross-action against Weingarten for indemnity, or in the alternative for contribution. It alleged that under the terms of the contract it agreed to inspect and maintain the track and Weingarten agreed to pay for such repairs. It then alleged that prior to the accident The Belt warned Weingarten that the tracks needed repair immediately, and that Weingarten began haggling about the price and finally undertook to do the work itself and would not allow The Belt to perform the needed repairs. It alleged that the tracks were repaired by Weingarten in an improper manner and as a result became uneven and out of level, causing the accident in question. It alleged that this conduct constituted a breach of a paramount duty owed not only to the deceased employee, but also to The Belt, by reason of which The Belt was entitled to contribution, and, in the alternative, full indemnity *at common law.*

The cross-action then alleged the provisions of the contract relating to payment for repairs, indemnity and contribution. It was alleged that the *refusal* of Weingarten to allow The Belt to make the necessary repairs and to pay therefor constituted a breach of contract. There follows the allegation that as a result of *this breach of contract,* and by reason of the indemnifying agreement, The Belt was entitled to full indemnity, or, in the alternative, contribution.

■ The Belt requested no issues relating to the alleged conduct of Weingarten in refusing to permit The Belt to make repairs or to pay for repairs. The evidence does not conclusively establish such refusal. The Belt's failure to request issues on these matters constituted a waiver of its cause of action based on breach of contract. Rule 279, T.R.C.P.; Grant v. Marshall, 154 Tex. 531, 280 S.W.2d 559 (1955). The Belt must recover, therefore, if at all, on the basis of the contract, or the rules of common law governing contribution and indemnity under the facts found by the jury.

In its cross-action Weingarten alleged that The Belt leased certain premises from Weingarten consisting of a railroad right of way upon which The Belt was contractually obligated to construct and/or maintain, inspect and determine needed repairs to such property, thereby assuming all liability arising out of defective conditions present by reason of The Belt's failure to adequately maintain those premises. There was an allegation that Weingarten was the legal titleholder of such property, the alleged defective condition of which plaintiff alleges to have caused the death made the basis of her cause of action, and that The Belt, as lessee, assumed all obligations of Weingarten in the care and maintenance of such property. The prayer was for indemnity, or, in the alternative, for contribution.

Since no lease agreement, other than the instrument designated as a track agreement, was introduced or referred to in the statement of facts, Weingarten necessarily relies on the track agreement to support the judgment for indemnity. Weingarten has not contended that the agreement is not in full force and effect, but it does contend that since it was conclusively established that the defective condition of the track, a condition known to The Belt, was the proximate cause of the derailment, The Belt was in default under the terms of the contract, and can not rely on its provisions to escape liability resulting from such breach.

■ By continuing to perform its obligations under the contract and by insisting on performance on the part of The Belt, Weingarten lost its right to rescind the contract or to refuse performance on its part, but not its cause of action for damages for breach of the contract by reason of The Belt's failure or refusal to maintain the track. Dibrell v. Ramsey Bros., 294 S.W. 645 (Tex.Civ.App., Austin, 1927, error ref.); Sinclair Refining Co. v. Costin, 116 S.W.2d 894 (Tex.Civ.App., Eastland, 1938); Western Irrigation Co. v. Reeves County

Land Co., 233 S.W.2d 599 (Tex.Civ.App., El Paso, 1950).

■ At common law Weingarten was entitled to full indemnity as against The Belt since, although as to Mrs. Tepkin, the plaintiff, they were joint wrongdoers, The Belt had breached a duty it owed to Weingarten as well as to its deceased employee. In such a case Article 2212, Vernon's Ann. Civ.St., dealing with contribution between joint wrongdoers, has no application. Auston Road Co. v. Pope, 147 Tex. 430, 216 S. W.2d 563 (1949); Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449 (1941); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W. 2d 609 (1951).

■ It is settled law that in Texas indemnity contracts are valid even though they provide for the relief of a party from the consequences of his own negligence. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.Sup.1963).

■ The intention of the parties with reference to indemnity and contribution must first be ascertained by rules of construction applicable to contracts generally with neither party favored over the other merely because the agreement is one of indemnity. Once the intention is determined the liability of the indemnitor under the contract as interpreted will not be extended beyond the terms of the agreement. Mitchell's, Inc. v. Friedman, supra.

While a contract containing an indemnity and contribution clause identical to the one in this agreement was construed in Ealand v. Gulf, Colorado & Santa Fe Railway Co., 411 S.W.2d 591 (Tex.Civ.App., Beaumont, 1967), that case furnishes us little guidance since there was another paragraph in the contract not found in this agreement, which was an important factor in construing that contract.

A substantially identical provision concerning indemnity and contribution was construed in Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902 (U.S.Ct. of App., 9th Cir., 1950). There the court held that it was the intention of the parties to provide that the portion of the paragraph providing for indemnity should apply to situations covered by Section 95 of the Restatement of the Law of Restitution, which provides:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

The court then held that the portion of the paragraph providing for contribution applied to situations covered by Section 102 of the Restatement, which provides:

"Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other."

In Foster v. Pennsylvania R. Co., 201 F.2d 727 (U.S.Ct. of App., 3rd Cir., 1952), the same agreement was considered and in a footnote the court said:

"It is apparent that paragraph 8 of the siding agreement treats of three different situations. The first deals with fire caused by locomotives and attempts to relieve the railroad from loss caused by its own negligence. The second deals with a primary-secondary, active-passive kind of negligence and provides for indemnity for the railroad from loss caused

by the primary negligence of Crown Can, for which the railroad was also liable but only secondarily so, because of some legal relation to the injured party, as here, that of employer-employee. The third covers the situation of concurring, primary negligence and provides for contribution."

■ The Booth-Kelly case was followed in Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 218 F.2d 207 (U.S.Ct. of App., 3rd Cir., 1955). In this case the court specifically considered that portion of Section 95 of the Restatement providing that one guilty of passive or secondary negligence nonetheless is not entitled to indemnity if he acquiesces in the continuation of the condition. The court held that in such a case acquiescence, being a matter of volition, cannot exist without actual knowledge of the particular unsafe condition forming the basis of the plaintiff's recovery. It is our opinion that, following the same line of reasoning, before acquiescence can be found, it must also appear that the condition was obviously dangerous, or was known to be dangerous to the party to be charged. It would be difficult to justify a holding that one knowingly agreed to, or permitted, the maintenance of a dangerous condition unless he knew that the condition was dangerous.

■ Clearly The Belt is not entitled to indemnity since the evidence conclusively established its negligence in failing to properly maintain the track under the terms of the contract. The evidence does not conclusively establish that Weingarten acquiesced in the maintenance of the particular dangerous conditions found by the jury to be proximate causes of this accident. There were no special issues submitted or requested on this question.

■ The difficulty arises in determining whether The Belt is entitled to contribution in spite of the fact that Weingarten's negligence resulted from The Belt's violation of a duty owed to Weingarten. The contract requires Weingarten to indemnify The Belt against its own negligence in the case of certain damage resulting from fire even though Weingarten is not negligent. It specifically requires Weingarten to indemnify The Belt from loss resulting from the failure of Weingarten to require its employees, and others on or around the track with the permission of Weingarten, to notify the employees of The Belt of their presence by proper signals or flags, and this regardless of the quality of the negligence of The Belt which might concur in causing the loss. If Weingarten should violate the duty placed on it to keep the track free of obstructions, or to adopt and enforce reasonable safety rules for its employees, there is little doubt but that it would be liable to indemnify The Belt under paragraph (h) despite the negligence of The Belt in failing to provide its employees with a safe place to work or similar passive negligence. If, on the other hand, The Belt is guilty of negligence of the same quality as that of Weingarten, then contribution would be required under paragraph (h). Specific provision was made for indemnity to the Belt in certain situations without respect to the quality of its own negligence, or despite the fact that Weingarten was not guilty of negligence. The provisions of paragraph (h) can be made effective without attributing to the parties an intention that Weingarten should contribute in the event of a loss caused by the violation of a duty owed to Weingarten by The Belt under the terms of the same contract. An interpretation to this effect would deprive Weingarten of, perhaps, the only effective remedy for a breach of The Belt's contractual duty to maintain the track. The Belt is not entitled to contribution.

The Trial Court did not err in awarding indemnity to Weingarten. The judgment of the Trial Court is affirmed.