SHELL OIL COMPANY, Plaintiff in Error, v. GEORGE W. BLANKS, Defendant in Error. —330 S. W. (2d) 569.

Eastern Section.    February 26, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

·Campbell & Campbell, Chattanooga, for plaintiff in error.

Harry Berke, Chattanooga, for defendant in error.

McAMIS, P. J. George W. Blanks sued Shell Oil Company and C. A. Bonam for damages for personal injuries sustained on May 15, 1957, when a steel pole he was painting gave way causing his ladder to fall and throwing him upon the concrete surface of a filling station operated by Bonam as lessee of Shell Oil Company.

On undisputed evidence that Shell Oil Company assumed the obligation of maintaining the pole and that Bonam had nothing to do with the employment of plaintiff or with the installation or maintenance of the pole, a verdict was directed for Bonam. There is no complaint as to that action of the Court. The motion for a directed verdict of Shell Oil Company was overruled and the jury returned a verdict against it for $42,500.

Defendant moved for a new trial which was overruled and it has appealed, insisting that the pole, though defective in the respect hereinafter shown, was sufficient to

support a string of lights, the purpose for which it was being maintained; that plaintiff was guilty of contributory negligence as a matter of law in leaning his ladder against the pole when he knew or should have known of the defect; that, in any event plaintiff was not in its employ but in the employ of an independent contractor and it, therefore, owed him no duty to provide him with a safe place to work or other duty except not to wilfully injure him while on the station premises.

The steel pole in question was of a type used by defendant on all of the stations it leased to operators in Chattanooga. It was some 25 feet in height tapering from the ground up to the top where it was 2 to 3 inches in diameter. It was so hinged or pivoted near the middle that the top of the pole could be lowered to the ground by means of a rope attached at the top for the purpose of changing light bulbs, and then raised again by pulling on the rope. When erected it was securely fastened in place at the pivot by a bolt and tap. On this particular pole, the bolt and tap, some years prior to the accident, had become defective and could not be used to keep the pole erect. As a substitute, smooth wire had been used to wrap around the pole to prevent it from tipping over.

According to credible evidence, defendant had been notified of the defective condition of the pole but had failed to replace the bolt and tap. It is inferable that when its service man would discover that a light bulb needed to be replaced he would unwrap the wire, lower the top of the pole to replace the old bulb, then raise it and again wrap the wire around it and that each year when the pole was painted the wire would be painted over causing the appearance of the wire and pole to blend.

By the terms of its lease defendant assumed the obligation of maintaining the stations, including the poles, and keeping them painted. For 1956 and 1957 and up to the date plaintiff was injured, J. K. Keith had the contract with defendant to keep the stations, including the station leased and operated by Bonam, painted. Plaintiff had been in the employ of Keith for about two months. He had painted many of the poles in an upright position without incident. He was instructed by Keith whenever possible to keep his ladder out of the way of customers of the station and, to observe this instruction, just prior to the accident, he placed his ladder on the defective pole in such position that the weight of his ladder tended to push the pole in the direction the pivoted joint permitted it to be lowered at the top. He then ascended the ladder intending to paint down the pole. When he reached the top, the wire which had been improvised as a substitute for the bolt and tap broke causing the pole to bend at the pivot. He was thrown violently to the paved surface of the station and painfully and seriously injured.

There is evidence that it was not practicable to attempt to lower the top of the poles and paint them in a horizontal position because of the interference with customers of the station and the difficulty of placing them back in an erect position while the paint was still wet. Plaintiff testified that he knew nothing of the defective condition of the pole in question and failed to notice the wire wrapped around the pole. There is also evidence that others who had passed the pole frequently had never noticed the wire or the defective condition of the pole.

Defendant's agents and employees, knowing of the defect, gave no notice to Keith or to plaintiff. It gave no

instructions that the poles should or should not be painted while erect or that this particular pole, because of the defect, could be safely painted only in a horizontal position.

We think defendant is correct in its insistence that Keith was an independent contractor over whom it had no right of control. But, does this relieve it of all duty to Keith's employees and, particularly, the duty either to warn them of the danger or remove it?

While there are cases to the contrary, the weight of authority is to the effect that the owner or occupier of the land, with certain exceptions, is duty bound to use reasonable care to provide a safe place in which an independent contractor and his employees can work. Hammond v. El Dorado Springs, 362 Mo. 530, 242 S. W. (2d) 479, 31 A. L. R. (2d) 1367 and Annotation 1375; Annotation 44 A. L. R. 990; 35 Am. Jur. 590, Master and Servant, Section 161. The rule applies to instrumentalities or appliances furnished by the contractee. 57 C. J. S. Master and Servant sec. 603, p. 376.

An exception to the general rule is recognized where the risks arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair. As to contracts for such repair work, it is reasoned that the contract is sufficient in itself to impart notice of a defect, the extent of which the repairman must discover for himself. Hammond v. El Dorado Springs, supra, and numerous cases there cited. This is merely to say that one assumes the risk of a known danger or of an undertaking which is inherently dangerous.

After noting this exception the annotator, 31 A. L. R. (2d) 1384, observes:

"On the other hand, where a risk separate and distinct from those created by the defects to be repaired under the contract resulted in the injury or death of a contractor or employee of the latter, it has been held that a contractee cannot successfully invoke the defense of assumption of risk and that the general rules (which are not the same in all jurisdictions) governing the extent of his duty to furnish an independent contractor and his employees a safe place of work and to warn them of hidden dangers are applicable."

As supporting this statement numerous cases from various state courts of last resort are cited under notes 1 and 2, which see.

These exceptions do not apply here. Defendant may be said to have reserved to itself control of the poles to the extent necessary to enable it to discharge its contractual duty to its lessee and for the purpose of promoting the sale of its products on the premises by keeping the station attractive to customers of the lessee. Keith's contract was not to repair the pole but to paint it. There was, therefore, nothing in the contract to imply the existence of a defect or a danger to be avoided. The painting of other poles, not defective, had been safely executed indicating that there was nothing inherently dangerous in painting the poles while in vertical position.

We find nothing in this case to take it out of the general rule that:

"A person who is having work done on his premises by an independent contractor, and has actual or con-

structive knowledge of latent or potential dangers on the premises, owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor or subcontractors who are without actual or constructive notice of the dangers." 57 C. J. S. Master and Servant sec. 606, p. 377.

While the question of the owner's duty to an independent contractor or to his employees to furnish a safe place in which to work was not discussed in Chamberlain v. Lee, 148 Tenn. 637, 257 S. W. 415; and International Harvester Company v. Sartain, 32 Tenn. App. 425, 222 S. W. (2d) 854, both of these cases hold that the contractor and his employees are to be treated as invitees of the owner. We hold, therefore, that defendant's duty was not limited to the duty owing a mere licensee but that its liability is to be determined by the standard of care owing an invitee.

We think it was for the jury to say whether defendant, knowing of the defect, in the exercise of reasonable care, should have anticipated that the pole might topple and injure the contractor or his employees to whom it owed a duty of protection against an unsafe condition of the premises or the appliances to be painted. The wire blended with the pole and thus might be termed a latent defect.

The principle is well established that, to impose liability, it is not essential that the precise manner in which an injury ultimately results be foreseeable but only that there was substantial likelihood that the negligence charged would result in "harm in the abstract." Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 31, 211 S. W. (2d) 450, 456; Wallace v. Electric Power

Board, 36 Tenn. App. 523, 259 S. W. (2d) 558; Rogers
v. City of Chattanooga, 39 Tenn. App. 176, 281 S. W.
(2d) 504.

■ We cannot say that plaintiff was guilty of proximate contributory negligence as a matter of law in failing to discover the defective condition of the pole. The wire, as before shown, had been painted over and it was for the jury to say whether a person in the exercise of due care for his own safety should have discovered the defect. There is evidence that it was safer and more practical to paint the poles standing than to break them over into a horizontal position.

There was no error in declining to direct a verdict for the defendant.

■ It is next insisted that a verdict for $42,500 is so excessive as to indicate passion, prejudice and caprice on the part of the jury.

At the time of the accident plaintiff was 53 years of age and had a life expectancy of 20 years. For the past several years he had been a painter earning between $5,000 and $6,000 per year.

The medical proof is to the effect that the heel bones in both feet were broken; that he has a 50% disability in his right foot and 20% in his left. Dr. Price, an orthopedic surgeon, testified: ''Climbing, long periods of weight-bearing, I don't believe he'll be able to do it. As a routine painter, I believe he's through.'' It is not shown that he could expect to get a paint job that did not require climbing or standing. His injuries were very painful and will continue to cause pain in walking. At the trial, eleven months after his injury, he was still on

crutches. His medical bill up to that time totaled $1,420.55 and he may need another operation. He had lost approximately $5,000 in wages.

■ Disregarding pain and medical expenses, the jury awarded considerably less than one half plaintiff's potential earnings over the period of his expectancy. It is too well settled to justify citation of cases that the amount to be awarded in personal injury cases rests largely in the discretion of the jury. We cannot say that an abuse of discretion on the part of the jury and trial court has been shown warranting a remittitur on appeal.

■ It is said the Court erred in allowing counsel for plaintiff to read from the mortality table appearing in the printed volumes of Tennessee Code Annotated. While it is true this table is not embraced within the Act adopting the Code, we think it must be presumed that it was placed there by the Code Commission and that it should be accepted as prima facie correct. Its correctness is not here disputed. Certainly there is no showing of prejudice.

■ Under T. C. A. sec. 20-1316 the submission of special issues of fact to the jury lies within the discretion of the trial court. The issues were neither numerous nor involved and the court exercised its discretion and denied the request for submission of special issues because it was considered that such issues would be more confusing than helpful to the jury. We cannot say there was an abuse of discretion.

Affirmed at defendant's cost.

Hale and Howard, JJ., concur.