Kimberly Ann HOSKINS, as surviving spouse of John Hoskins, deceased, and as natural guardian of Britne Hoskins and Kristen Hoskins, the surviving minor children, Plaintiff–Appellant,

v.

**A.O. SMITH CORPORATION,** Defendant–Appellee.

No. 00–5902.

United States Court of Appeals, Sixth Circuit.

Oct. 31, 2001.

Before SILER and CLAY, Circuit Judges; GRAHAM, District Judge.*

SILER, Circuit Judge.

In this wrongful death action arising out of the repair of a mechanical power press, plaintiff Kimberly Ann Hoskins ("plaintiff"), the surviving spouse of John Hoskins ("Hoskins"), deceased, and the guardian of their two minor children, appeals the district court's grant of summary judgment in favor of defendant A.O. Smith Corporation ("A.O.Smith"). Because A.O. Smith did not owe a duty to Hoskins under Tennessee law, we affirm.

BACKGROUND

In 1997, Hoskins was fatally injured while repairing a mechanical power press at A.O. Smith's plant in Milan, Tennessee. He was an employee of Mid–American Machine Repair, Inc. ("Mid–American"), an independent contractor specializing in the repair of presses. Hoskins had worked for Mid–American less than a year but had worked previously as a maintenance worker in a company's press department for at least seven years.

In the fall of 1996, Mid–American and A.O. Smith entered into an agreement for the repair of a Danly press. Pursuant to

---

* The Honorable James L. Graham, United States District Judge for the Southern District    of Ohio, sitting by designation.

the contract, Mid–American agreed to furnish men and equipment to complete the work within the scope of the agreement. The contract included a six-month warranty on the material and workmanship. Mid–American made the initial repairs to the press during A.O. Smith's Christmas shutdown. On January 6, 1997, David Mallory, an owner and the president of Mid–American, and Hoskins returned to A.O. Smith on a different job. Mallory and Hoskins noticed three A.O. Smith employees working on the press and went over to assist.

To determine why the press was malfunctioning, the ram, the part of press which moves up and down, had to be cycled. To cycle the ram, one person had to manually close a circuit relay on the side of the press, and another person had to simultaneously press two "inch" buttons on the front of the press. After cycling the ram, some of the men then went up in a manlift to see if any oil leaked from the overload valves at the top of the ram.

After going through this procedure at least four times, the five men agreed that Mallory, Hoskins, and Jerry Reaves, an A.O. Smith employee, would cycle the ram again while the other two went to lunch. When the two men returned, they would finish the repairs and put the press back into production. Hoskins said, "Let's do it, just get it over with where we can go to lunch," and climbed into the basket of the manlift. Mallory went to the front of the press to operate the inch buttons, and Reaves took his place at the control panel on the side of the press to close the circuit relay. Prior to closing the relay, Reaves walked around to the back of the press where Hoskins stood in the basket of the manlift, either already at the top of the ram or on the way up, and yelled or motioned to him that they were about to cycle the ram. Hoskins said "okay" and nodded

his head. Reaves then went back to the control panel, closed the circuit relay, and told Mallory that they were ready. Mallory pressed the inch buttons, and the ram cycled. Neither Mallory nor Reaves could see Hoskins from his position.

After cycling the ram and shutting down the press, Mallory and Reaves walked around the press and saw Hoskins lying in the basket of the manlift. Mallory lowered the basket of the manlift and found Hoskins unconscious and bleeding from a skull injury. Hoskins died shortly thereafter.

Asserting diversity jurisdiction, plaintiff filed this action against A.O. Smith, claiming that Hoskins was fatally injured due to the negligence of A.O. Smith and its employee Reaves. Granting A.O. Smith's motion for summary judgment, the district court held that A.O. Smith did not owe a duty to Hoskins under Tennessee law.

## STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment. *Ellis v. Chase Communications, Inc.,* 63 F.3d 473, 475 (6th Cir.1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## DISCUSSION

Duty is a question of law to be determined by the court. *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn.2000). Generally, an owner owes an independent contractor hired to perform work on the premises a duty to provide a reasonably safe place in which to work. *Blair v. Campbell,* 924 S.W.2d 75, 76 (Tenn.1996).

Tennessee has long recognized an exception to this general rule:

> An exception to the general rule is recognized where the risks arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair. As to contracts for such repair work, it is reasoned that the contract is sufficient in itself to impart notice of a defect, the extent of which the repairman must discover for himself. This is merely to say that one assumes the risk of a known danger or of an undertaking which is inherently dangerous.

*Shell Oil Co. v. Blanks,* 46 Tenn.App. 539, 330 S.W.2d 569, 571 (1959) (internal citation omitted). The Tennessee Supreme Court recently reaffirmed this exception and held that the exception does not violate public policy:

> [T]he law of this state, and of all others that we are aware, perceives danger as a legitimate consideration in the bargaining process, as long as the contractor has a reasonably specific idea of the perils that he or she will encounter.... Simply put, danger is often treated as one of the many factors in the pricing of an economic transaction.
>
> Furthermore, the policy of placing the risk of incurring physical harm during a repair job on a contractor holding himself or herself out as an expert in that work, as opposed to the lay premises owner, is not unjustified, at least as long as the owner does not willfully or intentionally harm the contractor.

*Blair,* 924 S.W.2d at 78.

Here, A.O. Smith contracted with Mid–American for the repair of the press. Mid–American agreed to furnish men and equipment to complete the repairs. The agreement provided that Mid–American would repair and test the press to assure proper running condition and included a six-month warranty. The repairs performed at the time of the accident were made pursuant to the agreement. There is no allegation that Reaves or any other employee of A.O. Smith willfully or intentionally harmed Hoskins. This case falls within the exception recognized in *Blanks;* therefore, A.O. Smith did not owe a duty to provide Hoskins with a reasonably safe workplace.

Relying on *Johnson v. EMPE, Inc.,* 837 S.W.2d 62 (Tenn.Ct.App.1992), plaintiff asserts that because Reaves was in control of the press at the time of the accident, he owed Hoskins a duty of ordinary care. *Johnson* sets forth the duty of a premises owner to an independent contractor as follows:

> An owner of premises who employs a contractor to perform work on the property, but who remains in control of the premises where the work is being done, owes to the employees of the contractor a duty to exercise ordinary care in the management of the premises in order to avoid exposing the employees to an unreasonable risk of harm.
>
> If, however, the contractor had complete control of the premises where the accident occurred and the owner had retained no control of that part of the premises except to the extent of determining if the work was being performed according to the contract, then the owner owes no duty of care to the employees of the contractor.

*Id.* at 65 (citation omitted).

*Johnson,* however, does not involve circumstances in which an independent contractor is injured while repairing the machine the contractor was hired to repair and does not discuss the exception recognized in *Blanks.* Nevertheless, to the extent *Johnson* applies to the present case,

there is insufficient evidence to support plaintiff's claim that Reaves was in control of the press at the time of the accident. Although Reaves and other A.O. Smith employees assisted with the repairs, Mallory and Hoskins were in control of the repairs to the press pursuant to the contract between Mid–American and A.O. Smith.

The dissent concludes that fact questions remain concerning the degree of control the parties possessed and exerted over the press and the premises, and that depending on the existence or degree of control exercised by A.O. Smith, it may have had a duty to warn Hoskins of the danger. While we disagree that the issue of control presents a genuine issue of material fact, we note that the record contains uncontroverted testimony by Reaves that he warned Hoskins that he was going to cycle the press and that Hoskins acknowledged that warning. Hoskins ascended in the manlift well knowing that he would be out of sight of both Reaves and Mallory while they operated the press and that no one remained who would be able to see him and communicate a warning to Reaves and Mallory if he should become endangered by the operation of the press.

Assuming, *arguendo*, that A.O. Smith had a duty to warn Hoskins, that duty was discharged by Reaves. Even if Reaves' testimony about the warning is discounted, Hoskins was, as the district court found, at least equally negligent as a matter of law and barred from recovery under Tennessee's comparative negligence law.

Because A.O. Smith did not owe a duty to provide Hoskins with a reasonably safe workplace under Tennessee law, the district court did not err in granting summary judgment to A.O. Smith.

AFFIRMED.

CLAY, Circuit Judge, dissenting.

CLAY, Circuit Judge.

Because I believe that fact questions remain concerning the degree of control that the parties possessed and exerted over the press and premises at the time of John Hoskins' fatal injuries, I respectfully dissent.

By concluding that there is insufficient evidence to support Plaintiff's claim that Defendant's employee Jerry Reaves was in control of the press, the majority misapplies the standards governing a summary judgment motion. When considering a motion for summary judgment, the district court must view the facts and reasonable inferences drawn from the facts in the light most favorable to the non-moving party, and through that lens determine whether a genuine question of material fact remains for trial. Fed.R.Civ.P. 56(c); *Baker v. Hadley*, 167 F.3d 1014, 1017 (6th Cir.1999). A genuine factual dispute or question is present where the evidence would permit a reasonable jury to return a verdict favoring the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In my view, the evidence Plaintiff proffered in opposition to Defendant's motion for summary judgment, particularly when viewed in the light most favorable to Plaintiff, adequately discloses genuine factual questions for a jury's resolution.

The "well-settled" law in Tennessee is that a premises owner, in hiring an independent contractor to perform services on site, retains a duty to provide a reasonably safe workplace. *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn.1996). The Tennessee Supreme Court in *Blair* recognized an "important exception" to this rule that, when the unsafe condition arises out of the object or location under repair, the repair contract sufficiently places the contractor on notice of danger. *Id.* at 76–77 (quoting

*Shell Oil Co. v. Blanks,* 46 Tenn.App. 539, 330 S.W.2d 569, 571 (Tenn.Ct.App.1959)). The *Blair* court applied this exception, concluding that the contract for repair work sufficiently placed the contractor on notice of a defect on the premises and thereby absolved the owner of any duty to provide a reasonably safe workplace. *Id.* at 77. Significantly, the Tennessee Supreme Court outlined the public policy served by this conclusion under the specific circumstances present in *Blair,* wich concerned injury to a contractor while performing work at a private individual's home:

> Furthermore, placing the risk of incurring physical harm during a repair job on a contractor holding himself or herself out as an expert in that work, as opposed to the lay premises owner, is not justified, at least as long as the owner does not willfully or intentionally harm the contractor. To hold otherwise would be to require the untutored owner to inspect the roof for defects before calling a roofing contractor; it would also require the owner to inspect the electrical box before employing an electrician. We do not believe sound public policy requires such an anomalous result. . . .

*Id.* at 78 (footnote omitted).

These considerations of public policy do not necessarily inhere where the contractor performs work at an industrial or business site. A knowledgeable and skilled business owner may retain control over the site or the object of the contractor's work, and whether the owner has a duty to warn of dangers will depend on the existence or degree of that control. The premises owner will be relieved of this duty "where the contractor [is] *indisputably* in control of the premises." *Johnson v. EMPE, Inc.,* 837 S.W.2d 62, 65 (Tenn. Ct.App.1992). Where control over the

premises is not "indisputable," the question of control, and therefore duty, becomes a factual matter for the jury's consideration. In *Johnson,* the court looked to the Tennessee Pattern Jury Instructions for the "controlling principle." *Id.* The current version of the jury instruction discussed in *Johnson* provides as follows:

> When an [owner] [or] [occupant] of property remains in control of the premises where work is being done, the [owner] [or] [occupant] has a duty to use ordinary case in managing the property to avoid exposing the employees of a contractor or subcontractor to an unreasonable risk of harm.

> When the contractor has complete control of the premises where the accident occurred and the [owner] [occupant] retains no control of that part of the property [except to the extent of determining if the work is being performed according to the contract], the [owner] [occupant] owes no duty of care to the employees of the [contractor] [subcontractor].

T.P.I.3—Civil 9.06, Duty to Workers— Control (3d ed.1997). This instruction clearly indicates that an owner's retaining control over the premises is sufficient to impose a duty to avoid unreasonable risks to the contractors' employees, and whether such control existed can be fact a question for the jury. It flows rationally from this principle that when the owner's employees exercise control over, or participate in, the contractor's work itself, then a duty to avoid danger to the contractor's employees can also arise, and can create a material question of fact. In my view, Plaintiff's evidence adequately creates such factual issues concerning control and precludes summary judgment.

Plaintiff submitted evidence showing that several of Defendant's employees were endeavoring to repair the press on

the day of Hoskins' injuries. When independent contractor Mallory and his employee Hoskins, on premises for another job, noticed that Defendant's employees were working on the press, Mallory and Hoskins returned to work on the press. Defendant's employees did not step aside, but continued to participate in the repair work alongside Mallory and Hoskins. Although two of Defendant's employees eventually departed for lunch, Defendant's employee Reaves remained to work with Mallory and Hoskins. Plaintiff's evidence further shows that, just prior to Hoskins' injuries, Reaves was the only person capable of communicating with both Hoskins and Mallory. It is unclear whether the independent contractor's employees or the premises owner's employees were in control of the repair work, or the premises, such that that determination should have been left for the factfinder.

When properly considered pursuant to Rule 56(c), this evidence demonstrates that the question of control over the press and premises is far from "indisputable." When Plaintiff's evidence is viewed in the light most favorable to her, a reasonable jury could conclude that Defendant's employees retained control over the premises and the press, imposing a duty on Defendant to avoid unreasonable risks to employees of the contractor. A jury should be permitted to resolve these factual disputes concerning control. Accordingly, I would therefore reverse the district court's order granting summary judgment on Plaintiff's negligence claim.