IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MARCH 16, 2005 Session

## JAMES CRAIN, ET AL. v. BAPTIST MEMORIAL HOSPITAL

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002421-01      Kay S. Robilio, Judge**

_____

**No. W2004-00477-COA-R3-CV - Filed August 18, 2005**

_____

In this premises liability suit, we are called upon to evaluate the trial court's grant of summary judgment to the defendant/landowner. The trial court concluded that, as a matter of law, the injured plaintiff, an employee of an independent contractor performing electrical work on the premises, could not establish that the defendant/landowner owed him a duty. Since the plaintiff could not establish an essential element of his negligence cause of action, the trial court granted the defendant/landowner's motion for summary judgment. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Curtis D. Johnson, Jr., Memphis, TN, for Appellants

George T. Wheeler, Jr., Memphis, TN, for Appellee

**OPINION**

**I.**
**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the summer of 1999, James Crain ("Mr. Crain" or "Appellant") began an apprenticeship program which was to last four to five years and would enable him to work toward becoming a licensed journeyman electrician. The program encompassed classroom instruction coupled with on-the-job training. Mr. Crain was originally assigned to work with an electric company as a materials handler, but he was laid off due to a lack of work. Mr. Crain was subsequently reassigned to work

with TAM Electric Company ("TAM Electric"), a Tennessee limited liability company performing electrical work for customers as a licensed electrical contractor. TAM Electric originally assigned Mr. Crain to work on its electrical project at AutoZone Park in Memphis while the park was under construction. At some point, TAM Electric contracted with Baptist Memorial Hospital ("Baptist" or "Appellee") to perform electrical work on the hospital's expansion project. Thereafter, TAM Electric reassigned Mr. Crain to work on the electrical project at Baptist. During the first year of the apprenticeship program, Mr. Crain was discharged for missing too many classes due to illness. Despite being discharged from the program, Mr. Crain continued to work for TAM Electric at Baptist.

In September of 2000, Ken Kirkpatrick ("Mr. Kirkpatrick"), the Assistant Director of Facilities for Baptist and manager of the expansion project, informed Ronald Wolfe ("Mr. Wolfe"), foreman for TAM Electric at the Baptist project, that Baptist needed to move its mobile MRI trailer to a new location. Mr. Kirkpatrick showed Mr. Wolfe the area Baptist wanted to move the trailer to, and he asked Mr. Wolfe if TAM Electric would relocate the electrical receptacle which powered the machine. TAM Electric agreed to perform the work, and, other than designating the new location for the machine, Baptist had no involvement in the manner in which TAM Electric accomplished the task.

Mr. Wolfe selected one of TAM Electric's journeyman electricians to oversee the project, and he assigned Mr. Crain and two other employees to assist with the project. In anticipation of moving the electrical receptacle, Mr. Wolfe removed the fuses from a disconnect box located inside an electrical closet. In fact, TAM Electric installed the electrical closet and disconnect box when the hospital was originally constructed. According to Mr. Wolfe, he removed the fuses so that the "load side" wires (wires carrying power out of the disconnect box to the outdoor receptacle) would be de-energized. However, removing the fuses did not affect the "line side" wires (wires carrying electricity into the disconnect box) which remained energized. On the morning of September 25, 2000, the journeyman electrician instructed the three employees assigned to assist him, including Mr. Crain, to "ring out" the wires in the 480-volt disconnect box located inside the electrical closet. The journeyman electrician took Mr. Crain and one of the other assistants inside the electrical closet and showed them the disconnect box where they would "ring out" the wires. According to Mr. Crain, the journeyman electrician assured him that the disconnect box was "cold." In fact, the electricity flowing to the "line side" wires was never shut off. In order to "ring out" the wires, Mr. Crain was instructed to touch a "jumper wire" to the ends of the "load side" and "line side" wires in order to identify the positive and negative lines. As Mr. Crain touched the end of the "jumper wire" to the end of the "line side" wire, and electrical fire erupted causing Mr. Crain and the other employee in the room to sustain severe burns.

On April 18, 2001, Mr. Crain[1] filed a complaint against Baptist[2] alleging negligence under a theory of premises liability. Specifically, Mr. Crain alleged that Baptist, as the owner of the premises, owed him a duty to remove or warn him against latent or hidden defects and dangerous conditions on the premises. Baptist filed its answer and contended that it did not owe a duty to Mr. Crain because TAM Electric had full control and responsibility for the project. After discovery was completed, Baptist filed its motion for summary judgment along with the affidavits of Mr. Wolfe and Mr. Kirkpatrick. In his affidavit, Mr. Wolfe stated that TAM Electric had complete responsibility for and control over the disconnect box at the time of the accident, TAM Electric knew that it would be working with an energized disconnect box, and the disconnect box contained no hidden or latent defects at the time Mr. Crain sustained his injuries. Mr. Crain filed his initial response to Baptist's motion, but he requested a continuance in order to file the affidavits of his expert witness in opposition to the motion. Thereafter, Mr. Crain submitted the affidavit of his expert, Sean Yates ("Mr. Yates"), wherein Mr. Yates offered his opinion that Mr. Crain lacked the experience and training to identify the potential danger associated with the 480-volt disconnect box; that Baptist, without the prompting of TAM Electric, should have stopped the flow of electricity to the disconnect box before TAM Electric employees were allowed to work on the project; and that removing the fuses would not eliminate the flow of electricity to the disconnect box, therefore, constituting a hidden defect or danger. In response, Baptist filed a reply which included pictures of the door on the disconnect box containing a label warning of the risk of electrical shock.

On December 31, 2003, the trial court drafted a letter to the parties wherein the trial court, relying on our supreme court's decision in *Blair v. Campbell*, 924 S.W.2d 75 (Tenn. 1996), stated as follows:

> In the instant action under consideration, the Defendant needed to relocate an electrical feed. Since the Defendant knew that it did not possess the requisite knowledge to perform such a dangerous job, the Defendant hired TAM, an independent contractor known to the Defendant to be an expert in the field of electrical contracting. TAM was given complete and exclusive control over the project, including the supervision of the TAM employees involved in the project. It was during the execution of this project that the Plaintiff was unfortunately injured.

---

[1] Mr. Crain's parents, Rumsey Crain and Joan Suzanne Crain, joined him in his lawsuit against Baptist seeking damages for loss of consortium.

[2] In his complaint, Mr. Crain stated that the defendant was Baptist Memorial Health Care Corporation. Thereafter, Baptist Memorial Health Care Corporation filed a motion for summary judgment noting that it was a separate and distinct entity not affiliated with Baptist Memorial Hospital. As a result of this motion, Mr. Crain filed an amended complaint to clarify that, although his original complaint made reference to Baptist Memorial Health Care Corporation, in actuality he intended to refer to Baptist Memorial Hospital as the proper party defendant.

While there is a general duty of a landowner to provide a reasonably safe work environment for an independent contractor, there is an exception to this rule when the contractor is hired to perform inherently dangerous work. The contractor in such circumstances is on notice of the danger inherent to the job and "the owner is under no duty to provide a reasonably safe workplace to the contractor." [*Blair*, 924 S.W.2d at 77].

This Court is not persuaded by Plaintiff's reliance in the instant case on the expert affidavit of Sean Yates. Mr. Yates' affidavit cannot create a legal duty on the part of the Defendant to provide a safe environment. The question of whether such a duty was owed to a plaintiff is a question of law and solely for a trial court to determine.

Thus, the Court finds that there was no legal duty on the part of the Defendant to provide a safe work environment for the Plaintiff due to the inherently dangerous work involved in this project. TAM was solely responsible for the execution of this project that they were hired to perform and for supervising their employees accordingly. The Court notes that the Plaintiff's remedy for his injuries is his workers compensation benefits, which he is currently receiving.

On January 6, 2004, the trial court entered an order granting Baptist's motion for summary judgment and incorporated the aforementioned letter. Mr. Crain filed a timely appeal to this Court and presented, in essence, the following issue for our review: whether the trial court erred in granting the Appellee's motion for summary judgment. For the reasons set forth more fully herein, we affirm the trial court's grant of summary judgment to the Appellee.

## II.
### STANDARD OF REVIEW

In this negligence action, Mr. Crain, as the plaintiff, bears the burden of establishing the following:

As we have frequently observed, a negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation.

*Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *see also Hale v. Ostrow*, No. W2003-01256-SC-R11-CV, 2005 Tenn. LEXIS 612, at *5–6, ___ S.W.3d ___ (Tenn. 2005). Since we are called upon

to evaluate the trial court's grant of summary judgment to a party in this case, we employ the following standard of review:

> The standards governing an appellate court's review of a summary judgment motion are well settled. Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle the defendant to judgment as a matter of law. *McCarley v. West Quality Food Service*, 948 S.W.2d 477, 1997 Tenn. LEXIS 364 (1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); Tenn. R. Civ. P. 56.03.

*Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997).

### III.
#### DISCUSSION

In reviewing a trial court's grant of summary judgment to a party, we are mindful that:

> Under Rule 56.03, upon motion, summary judgment shall be entered against a party who failed to make a showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial. If the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*Moman v. Walden*, 719 S.W.2d 531, 532 (Tenn. Ct. App. 1986). The trial court determined that since Mr. Crain could not, as a matter of law, establish that Baptist owed him a legal duty, summary judgment was appropriate in this case. The issue of whether the defendant owed a plaintiff a legal duty is a question of law to be determined by the courts of this state. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869–70 (Tenn. 1993). We agree with the trial court in that the law controlling our resolution of this case is set forth in our supreme court's decision in *Blair v. Campbell*, 924 S.W.2d 75 (Tenn. 1996).

In *Blair*, a premises liability case, the defendant/landowner hired the plaintiff to perform repair work on property she intended to rent or sell. *Blair*, 924 S.W.2d at 76. Specifically, the defendant requested that the plaintiff repair or replace the roof over the porch because it was leaking. *Id*. The plaintiff was given complete control over the manner in which he completed the project.

*Id*. One of the plaintiff's employees propped a ladder against the gutter on the porch, and the plaintiff was thrown to the ground while descending the ladder when the wood (which was rotten) supporting the gutter collapsed. *Id*. The plaintiff sued the defendant/landowner in negligence under a theory of premises liability alleging that the defendant failed to provide him a safe place to work. *Id*. The trial court granted summary judgment to the defendant/landowner, and this Court affirmed by holding that the defendant/landowner did not have a duty to provide the plaintiff with a safe place to work. *Id*.

On appeal to the Tennessee Supreme Court, the court reiterated the general rule regarding the duty owed by a landowner in cases of this nature:

> It is well-settled that an owner generally owes an independent contractor[3] hired to perform work on the premises a duty to provide a reasonably safe place in which to work. ***Hutchison v. Teeter***, 687 S.W.2d 286, 288 (Tenn. 1985); ***Broome v. Parkview***, 49 Tenn. App. 725, 359 S.W.2d 566, 568 (Tenn. App. 1962). This general duty includes the specific responsibility of either removing, or warning the independent contractor of, any hidden or latent dangers on the property. ***Eaton v. McLain***, 891 S.W.2d 587, 595 (Tenn. 1994); ***Odum v. Haynes***, 494 S.W.2d 795, 800 (Tenn. App. 1972); ***Jackson v. Tennessee Valley Authority***, 413 F. Supp. 1050, 1056 (M.D. Tenn. 1976).

*Id*.; *see also **Rice v. Sabir***, 979 S.W.2d 305, 308 (Tenn. 1998) ("In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence.") However, the supreme court noted an exception to this general rule which applies when the independent contractor or his employees are injured performing a task which involves a risk inherent in the task which he or she is to perform:

> An important exception to this general rule has, however, long been recognized in Tennessee law. In ***Shell Oil Co. v. Blanks***, 46 Tenn. App. 539, 330 S.W.2d at 571 (Tenn. App. 1959), a case in which a contractor hired to paint a steel lightpole on gas station premises brought suit after the pole collapsed and caused his ladder to fall, the Court of Appeals explained that:

---

[3] Appellant does not contest that TAM Electric was an independent contractor and not an employee of Baptist. In his affidavit, Mr. Wolfe clearly articulated that TAM Electric controlled all of the work it performed on the project independent of Baptist's involvement. In his deposition, Mr. Crain testified that Mr. Wolfe, as TAM Electric's foreman for the Baptist project, controlled the work being done at the site. Accordingly, we are not called upon to decide whether TAM Electric was an independent contractor as this fact is not in dispute.

> An exception to the general rule is recognized where the risks arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair. As to contracts for such repair work, it is reasoned that the contract is sufficient in itself to impart notice of a defect, the extent of which the repairman must discover for himself. *This is merely to say that one assumes the risk of a known danger or of an undertaking which is inherently dangerous.* **Blanks**, 330 S.W.2d at 571.

**Blair**, 924 S.W.2d at 76–77 (emphasis added). The court went on to state that the nature of the contract in *Blair* was sufficient to put the contractor on notice of any defects in the premises, therefore, it was the contractor's responsibility to discover the extent of such defects. *Id*. at 77.

Relying on the reasoning in *Blair*, the trial court determined that the work TAM Electric was asked to perform for Baptist was inherently dangerous, therefore, the exception set forth in *Blair* applied, and Baptist owed no duty to Mr. Crain. In an effort to distinguish the present case from *Blair*, Mr. Crain seeks to demonstrate that the job he was called upon to do by TAM Electric was not inherently dangerous by pointing to his deposition testimony, wherein he stated that he believed there was no electricity flowing to the disconnect box (*i.e.*, since he believed there was no electricity flowing to the disconnect box, the work he was performing cannot be considered inherently dangerous). Mr. Crain also points to the fact that, as an apprentice, he was not expected to work with electricity. We find this argument to be without merit. "The exception in *Blair* does not depend upon the expertise of the repairman or lack thereof. Rather, as *Blair* notes, the contract itself is sufficient to impart notice of the defective condition on the invitee." **Whalen v. Roberts**, No. 03A01-9707-CV-00246, 1997 Tenn. App. LEXIS 872, at *3 (Tenn. Ct. App. Dec. 9, 1997). Baptist, as a landowner unskilled in handling devices carrying electric current, called upon an independent contractor experienced with handling electricity, TAM Electric, to perform the requested task. It was understood by the parties that the very nature of the work to be performed by TAM Electric required the handling of electricity. Mr. Wolfe stated in his affidavit that TAM Electric maintained complete control and responsibility for the project, and TAM Electric was aware that the project required the handling of electricity.

Prior decisions by the courts of this state have noted the inherent dangerousness involved with handling electricity. **See Wilson v. Elec. Power Bd. of Chattanooga**, 544 S.W.2d 92, 96 (Tenn. 1976) ("It is true that in several cases, high tension electric lines have been referred to as dangerous instrumentalities . . . .); **Havron v. Sequachee Valley Elec. Co-Op**, 204 S.W.2d 823, 824 (Tenn. Ct. App. 1947) ("Electricity has been described as being potentially the most dangerous of the utilities commonly used . . . .). Thus, an independent contractor called upon to move an energized electrical receptacle is considered to be on notice that the task will require him to work with electricity, an inherently dangerous utility, and the premises owner does not owe the independent contractor's

employees a duty of care under such circumstances. **See Johnson v. EMPE, Inc.**, 837 S.W.2d 62, 65 (Tenn. Ct. App. 1992) ("If, however, the contractor had complete control of the premises where the accident occurred and the owner had retained no control of that part of the premises except to the extent of determining if the work was being performed according to the contract, then the owner owes no duty of care to the employees of the contractor.").

In affirming the trial court's grant of summary judgment to the landowner in *Blair*, the supreme court made the following observation which further solidifies our holding in this case:

> [T]he policy of placing the risk of incurring physical harm during a repair job on a contractor holding himself or herself out as an expert in that work, as opposed to the lay premises owner, is not unjustified, at least as long as the owner does not willfully or intentionally harm the contractor. To hold otherwise would be to require the untutored owner to inspect the roof for defects before calling a roofing contractor; *it would also require the owner to inspect the electrical box before employing an electrician*. We do not believe sound public policy requires such a anomalous result; therefore, the plaintiffs argument on that ground is without merit.

*Blair*, 924 S.W.2d at 78 (emphasis added). We find that the facts in the present case fall squarely within the exception enunciated by our supreme court in *Blair*. As such, Baptist did not owe a duty to Mr. Crain since the injury he sustained came from a risk inherent in the nature of the work his employer was called upon to perform. Accordingly, we affirm the trial court's grant of summary judgment to the Appellee.

## IV.
### CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the Appellants, James Crain, Rumsey Crain, Joan Suzanne Crain, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE