IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2018 Session

## JOEL FOUST ET AL. v. HANK DOUGLAS, JR. ET AL.

**Appeal from the Circuit Court for Cocke County**
No. 33-480-III        Rex H. Ogle, Judge

_____

### No. E2017-01403-COA-R3-CV
_____

Suit brought by a hospital security guard and his wife to recover for injuries he sustained when a patient whom he was guarding attacked him; the patient was intoxicated and had been handcuffed to a hospital bed by the security guard.  At the instruction of the hospital's patient care coordinator, the security guard removed the handcuffs; a short while later the patient attacked the guard, injuring him.  The suit alleged that the hospital was negligent in breaching various duties, which led to the guard's injuries.  The hospital moved for summary judgment, arguing it did not owe a duty to the security guard; the trial court agreed and granted the motion.  The security guard appeals.  Upon our review, we have determined that the undisputed facts show that the hospital voluntarily assumed a duty of care to the security guard and, consequently, reverse the judgment and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

F. Clinton Little and Eric B. Foust, Knoxville, Tennessee, for the appellants, Joel Foust and Nancy Foust.

Mark T. Smith and Hunter C. Branstetter, Nashville, Tennessee, for the appellees, Cocke County HMA, LLC d/b/a Newport.

**OPINION**

## I.    FACTUAL AND PROCEDURAL HISTORY

Joel Foust worked for S&W Security & General Services, Inc., which had contracted with Cocke County HMA, LLC, to provide security services at Newport Medical Center. [1] On the evening of June 3, 2013, Hank Douglas arrived at Newport by ambulance, in the custody of City of Newport police officers; he was intoxicated and behaving belligerently. Mr. Foust was called to the emergency room at approximately 8:00 p.m. to assist with Mr. Douglas. Upon Mr. Foust's arrival, a doctor asked him to restrain Mr. Douglas, which he did, using the handcuffs on his duty belt.

Mr. Douglas was eventually moved to an observation room where Mr. Foust continued to monitor him; throughout this time, Mr. Douglas remained handcuffed to the hospital bed. Sometime after 10:00 p.m., Steve Redding, a registered nurse who was working as the patient care coordinator for Newport, ordered Mr. Foust to take the handcuffs off Mr. Douglas, which he did. At some point Mr. Douglas attacked Mr. Foust; when Mr. Foust attempted to restrain him, they both fell to the floor. Mr. Foust sustained injuries to his left shoulder as a result of the fall.

On June 3, 2014, Mr. Foust and his wife, Nancy, ("Plaintiffs") filed suit against Mr. Douglas,[2] Cocke County HMA, LLC, Health Management Associates, Inc., and Community Health Systems, Inc,[3] alleging that Mr. Douglas was liable for assault and battery, and the remaining defendants were liable for negligence in breaching the following duties:

> [T]o use reasonable care in the care, supervision, and/or restraint of a patient who is belligerent, intoxicated, and/or violent, a duty to use reasonable care in the design and implementation of standards and guidelines for the supervision and control of belligerent, intoxicated, and/or violent patients, a duty to properly train and educate its employees to supervise and control belligerent, intoxicated, and/or violent patients, a duty to restrain a belligerent, intoxicated, and/or violent patient, a duty to keep an already restrained belligerent, intoxicated and/or violent patient restrained, and a duty not to expose Plaintiff to a substantial risk of harm.

---

[1] Cocke County HMA, LLC, is a Tennessee Limited Liability Company that does business as Tennova Healthcare and/or Newport Medical Center. We will refer to it in this opinion as "Newport."

[2] Mr. Douglas is not a party to this appeal.

[3] Health Management Associates, Inc., and Community Health Systems, Inc., were alleged to be Delaware corporations, doing "business as Tennova Healthcare — Newport and/or Newport." Both entities were voluntarily dismissed by order entered January 13, 2016.

2

Newport answered, asserting, among other defenses, that it owed no duty to Mr. Foust, and if it did, it "acted with ordinary and reasonable care or exceeded such standard, [and] that no act or omission by Newport was the proximate cause of any injury or damage to Plaintiffs that would not otherwise have occurred."

In due course, Newport moved for summary judgment, contending that it did not owe a legal duty to Mr. Foust because he was an independent contractor. In support of the motion, Newport filed a Tennessee Rule of Civil Procedure 56.03 statement of undisputed material facts and eight exhibits, including excerpts from the depositions of Mr. Foust and Mr. Redding, Mr. Foust's Employment Records from S&W, Newport's Contract with S&W, a Hospital Orientation Attestation for Joel Foust,[4] a Tennessee Crisis Prevention Institute (CPI) Training Certificate for Joel Foust,[5] Newport's "Job Description for Security Officer,"[6] and Mr. Foust's resume. Plaintiffs filed a response to Newport's statement and a separate "Statement of Disputed Material Facts," to which Newport responded, attaching additional excerpts from Mr. Foust's and Mr. Redding's depositions. Plaintiffs also filed a supplemental response, attaching previously unfiled portions of Mr. Foust's deposition.

The trial court granted Newport's motion in an order entered June 23, 2017. The trial court ruled that Newport "affirmatively negated any duty to Plaintiffs" because Mr. Foust was an independent contractor at the time he was attacked, and Newport therefore "had no duty to keep Mr. Foust safe from the violent actions of Mr. Douglas." Mr. Foust appeals, presenting two issues:

> 1. Did the Trial Court err in granting the Appellee's Motion for Summary Judgment when it found that the Appellee had no legal duty to the Appellant?

---

[4] In the memorandum in support of the motion for summary judgment, Newport asserted that in this document "the Plaintiff attested that he had been oriented on patient rights, and other hospital policies and procedures, including workplace violence prevention." No issue is raised in the briefs as to the authenticity or admissibility of this record.

[5] In the memorandum supporting the motion for summary judgment, Newport asserted that this document showed that "Plaintiff had also completed eight hours of in-service training on Tennessee CPI." No explanation of the nature or substance of the training is given. No issue is raised in the briefs as to the authenticity or admissibility of this record.

[6] In the memorandum on support of the motion for summary judgment, Newport asserted that "while S&W actually employed Plaintiff, per S&W's contract with the hospital, Plaintiff was subject to Newport Medical Center's job description for a security officer." No issue is raised in the briefs as to the authenticity or admissibility of this record.

2.       Did the Trial Court err by finding that the "Independent Contractor Exception" to the imposition of a duty on the part of the Appellee applied in the instant case?

## II.    STANDARD OF REVIEW

The dispositive issue in this appeal is whether the trial court erred in granting summary judgment to Newport.  Pertinent to our inquiry, our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

> * * *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We review the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).  We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey*, 90 S.W.3d at 695.

## III.   ANALYSIS

The existence or nonexistence of a duty owed by the defendant to the plaintiff is a question of law.  *Estate of Cunningham by & through Cunningham v. Epstein Enter. LLC*, No. W2015-00498-COA-R3-CV, 2016 WL 3662468, at *4 (Tenn. Ct. App. June 30, 2016) (citing *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993)).  However, "the nature or scope of the duty may depend on the resolution of a factual issue." *Estate of Cunningham*, 2016 WL 3662468, at *4.  "In deciding whether a duty exists, the

4

appellate court must take a fresh look at the record, 'viewing the evidence in a light most favorable to the ... nonmoving party, allowing all reasonable inferences and discarding all countervailing evidence.'" *Id.* (citing *Bradshaw,* 854 S.W.2d at 870).

> In the order granting Newport summary judgment, the trial court held:
>
> Plaintiff Joel Foust claims injuries arising out of an incident when he was attacked by a patient, Defendant Hank Douglas Jr., while he was working as an armed security guard at Newport Medical Center. The Court finds that, at the time of this incident, Mr. Foust's relationship to Newport Medical Center was that of independent contractor. The Court further finds that encountering and dealing with violent patients were risks inherent to Mr. Foust's assignment as an armed security guard at the hospital and that Mr. Foust had a reasonable expectation that he would face those risks. While there are other facts that are disputed in this case, none of those facts are material to the issue of duty and therefore are not grounds for precluding summary judgment in favor of Newport Medical Center.

Neither party disputes that an independent contractor relationship existed between Mr. Foust and Newport; they disagree on whether the evidence supports the trial court's holding that Newport did not owe Mr. Foust a legal duty.

Generally, an owner or occupier of a premises "owes an independent contractor hired to perform work on the premises a duty to provide a reasonably safe place in which to work." *Blair v. Campbell,* 924 S.W.2d 75, 76 (Tenn. 1996). That duty "includes the specific responsibility of either removing, or warning the independent contractor of, any hidden or latent dangers on the property." *Id.* There is an exception to this duty, referred to as the "independent contractor exception"; this exception relieves premises owners and occupiers from their general duty where danger is inherent in the work being performed, e.g., where dangers "'arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair.'" *Estate of Cunningham*, 2016 WL 3662468, at \*5 (quoting *Shell Oil Co. v. Blanks,* 330 S.W.2d 569, 571 (Tenn. Ct. App. 1959)). "The exception recognizes 'that one assumes the risk of a known danger or of an undertaking which is inherently dangerous.'" *Id.* The *Estate of Cunningham* court held that the independent contractor exception "can be extended to security guards," and that, where "an independent contractor faces a risk that is inherent in the job, the premises owner or occupier is not, *ipso facto,* relieved of a duty of care." *Id.* at \*7 (citing *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 300 (Tenn. Ct. App. 2007)). "For example, the premises owner or possessor may voluntarily assume a duty of care to the independent contractor."[7] *Id.*

---

[7] Voluntary assumption of a duty of care encompasses the idea that "[o]ne who assumes to act . . . may thereby become subject to the duty of acting carefully." *Biscan v. Brown*, 160 S.W.3d 462, 482-83 (Tenn.

Applying these principles to the facts of this case, we focus our inquiry to determine whether there is evidence that Newport acted in a manner that affected Mr. Foust's execution of his job duties, thereby assuming a duty to act with reasonable care. *Bennett*, 216 S.W.3d at 300; *see also Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 246 (Tenn. Ct. App. 1980).

The following pertinent facts, contained in Newport's Statement of Undisputed Material Facts, are undisputed:

1. From April 2013 until February 2014, Plaintiff worked for S&W Security & General Services, Inc. ("S&W").

2. Plaintiff had been involved in the field of providing security in various capacities since the mid-1990s including working for the Cocke County Sheriff's Department, had undergone "pretty high-end" training prior to his working at S&W, and, as a part of his previous security work, had faced high-risk situations including exchanges of gunfire.

3. Throughout his employment at S&W, Plaintiff was assigned to work at Newport Medical Center, which had contracted with S&W for S&W to provide security services.

4. Plaintiff underwent orientation and training at Newport Medical Center.

5. This included training in workplace violence prevention and Crisis Prevention Intervention or "CPI" training that included training on addressing unruly patients and non-combative deescalation.

---

2005) (quoting *Stewart v. State,* 33 S.W.3d 785, 793 (Tenn. 2000)). As noted in *Bennett*:

> Our state's courts have applied this principle in a variety of factual contexts. *See, e.g.,* [*Biscan*, 160 S.W.3d at] 467, 483 (adult who supervised underage drinkers at a house party assumed a duty of care vis-a-vis a motorist injured in an alcohol-related traffic accident); *Nidiffer v. Clinchfield R.R. Co.,* 600 S.W.2d 242, 246 (Tenn. Ct. App. 1980) (railroad had a duty of reasonable care to its employees to select a solvent group life insurance carrier); *cf. Stewart v. State,* 33 S.W.3d 785, 787–88, 793–94 (Tenn. 2000) (state trooper did not assume a duty to control the actions of local police officers at the scene of an arrest); *Lett v. Collis Foods, Inc.,* 60 S.W.3d 95, 104 (Tenn. Ct. App. 2001) (employer of an intoxicated employee driving home from work did not assume a duty vis-a-vis an injured motorist); *Marr v. Montgomery Elevator Co.,* 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995) (maintenance company did not assume a duty via-a-vis a patron who rode on top of an elevator at a tourist attraction).

216 S.W.3d at 300. "Whether or not a person has assumed a duty to act is a question of law." *Biscan*, 160 S.W.3d at 483 (citing *Stewart*, 33 S.W.3d at 793).

***

7.  Plaintiffs own resume stated that, while he worked at Newport Medical Center for S&W Security, he "patrolled hospital, secured premises, enforced regulations for combative patients, visitors and family members."

8.  Plaintiff encountered and dealt with violent behavior as a part of his work at Newport Medical Center.

9.  Plaintiff acknowledged that his working at Newport Medical Center for S&W created an increased risk that he would suffer physical or emotional harm.

11. Although it was not required, Plaintiff often wore body armor when he went to work at Newport Medical Center and was wearing body armor on June 3, 2013.

12. On the evening of June 3, 2013, at approximately 8:00 pm, Defendant Flank Douglas arrived by ambulance—and [was] accompanied by Newport Police to Newport Medical Center's emergency room.

13. Mr. Douglas was extremely intoxicated at the time of his arrival and behaving belligerently.

14. Although Plaintiff was not present for Mr. Douglas's arrival, he was called to the ER to assist with Mr. Douglas at approximately 8:00 pm.

21. The decision to remove restraints is within the discretion of healthcare providers such as doctors and nurses; this decision is not within the purview of Newport Medical Center's contract security guards.

22. After Mr. Douglas was restrained, he was eventually moved to an observation room where Plaintiff continued to monitor him for the next several hours.

26. When Mr. Redding observed Mr. Douglas, Mr. Douglas was lying in his hospital bed and not actively fighting or trying to leave his bed.

28. Because Mr. Douglas was not actively being violent and because he was handcuffed in contravention of Newport Medical Center's policies, Mr. Redding ordered Plaintiff to free Mr. Douglas from his handcuffs.

7

30. Plaintiff complied and removed the handcuffs he had placed on Mr. Douglas.

The following pertinent facts from Plaintiffs' Statement of Undisputed Material Facts, are also undisputed:

6. Douglas arrived at the hospital on the night Plaintiff was injured by ambulance and escorted by Newport Police Officers.

7. Douglas was in the custody of the Newport Police Department when he arrived at the hospital.

8. Douglas punched one of the paramedics who brought him to the hospital.

9. Plaintiff was told by medical staff, including the emergency department doctor, that Douglas needed to be restrained so he could not hurt anyone else.
RESPONSE: It is admitted that, at the time of Mr. Douglas' arrival, Mr. Foust testified, "They told me that he was out of control and they needed assistance to restrain him so that he would not hurt anyone else. This is after he had punched the paramedic . . . . I did not visually witness that, no."

12. Immediately prior to being restrained, Douglas was laying [sic] on the bed trying to strike and kick, and was extremely violent.

13. After Plaintiff restrained Douglas, Plaintiff was assigned to observe Douglas and make sure there were no other threats from him.
RESPONSE: It is admitted for purposes of the summary judgment motion only that Mr. Foust so testified. Mr. Redding also testified that Mr. Foust should have refused the police officers' instructions to stay with Mr. Foust because they had to leave.

23. Plaintiff was forbidden from using his independent judgment with regard to restraining or un-restraining Douglas.
RESPONSE: Newport Medical Center objects to this statement because it improperly suggests that Mr. Foust was a health care provider or had the expertise to make clinical decisions. Subject to and without waiving such objections, Mr. Redding testified that it was not Mr. Foust's call whether to restrain or unrestrain someone.

8

24. Plaintiff was required to obey Redding's order to release Douglas from the handcuffs.

RESPONSE: Newport Medical Center objects that the referenced testimony supports this statement as worded because Mr. Redding's testimony referenced whose responsibility it was to make this decision regarding restraints but said nothing about obedience.

We agree with the trial court that the undisputed facts show that Mr. Foust was aware that he would have to deal with unruly or violent patients in the course of his work at Newport. We disagree that this fact relieves Newport from any duty to Mr. Foust. The undisputed facts also show that the decision to remove restraints was within the discretion of Newport's healthcare providers and not within the purview of contract security guards, and that Mr. Redding instructed Mr. Foust to remove the handcuffs. Construed in a light most favorable to Mr. Foust, these facts show that Newport voluntarily assumed a duty of care to him; because Newport assumed this duty the independent contractor exception does not bar Plaintiff's claim. The nature and scope of the duty are to be determined by the finder of fact. *See Estate of Cunningham*, 2016 WL 3662468, at *4.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE